IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 01-cv-01644-REB-CBS

CARTEL ASSET MANAGEMENT,
a Colorado corporation,

      Plaintiff,

v.

OCWEN FINANCIAL CORPORATION,
a Florida corporation;
OCWEN FEDERAL BANK FSB,
a subsidiary of OCWEN FINANCIAL CORPORATION; and
OCWEN LOAN SERVICING, in its capacity as successor-in-interest to
OCWEN FEDERAL BANK, FSB,

      Defendants.

---

## ORDER ON PENDING MOTIONS

---

Magistrate Judge Craig B. Shaffer

THIS MATTER comes before the court on the following motions:

(1)      Defendants' Motion for Protective Order Regarding Plaintiff's Second Set of Interrogatories and Requests for Production of Documents Prior to Retrial (doc. # 518), filed on July 13, 2009;

(2)      Plaintiff's Motion to Compel and for Contempt Remedy (doc. # 529), filed on July 22, 2009;

(3)      Defendants' Motion to File Under Seal Reply to Plaintiff's Response to Defendants' Advice of Submission of Discovery Responses (doc. # 552), filed on October 27, 2009; and

(4)      Plaintiff's Motion to Strike "Defendants' Reply to Plaintiff's Response to Defendants' Advice of Submission of Discovery Responses" (doc. # 559), filed on October 29, 2009.

By Order of Reference to United States Magistrate Judge, dated April 1, 2002, this

matter was referred to the Magistrate Judge to, *inter alia*, "hear and determine pretrial matters,

including discovery and other non-dispositive motions."  The court has reviewed the pending

motions, the responses, and exhibits attached thereto.  The court also has considered the

arguments of counsel during hearings on June 17, 2009, July 6, 2009 and August 21, 2009, the

entire case file, and the applicable law, and is sufficiently advised in the premises.  For the

reasons discussed below, the court enters the following Orders.

## FACTUAL BACKGROUND

While the parties are certainly familiar with the procedural posture of this case, a

disinterested reader would be forgiven for not appreciating the extended and frequently

contentious history of this litigation.  For the benefit of the uninitiated, some pertinent

background information is essential.

Plaintiff Cartel Asset Management ("Cartel") filed its original Complaint (doc. # 1) on

August 21, 2001, asserting claims for misappropriation of trade secrets, breach of contract,

unfair competition, unjust enrichment and fraud.[1]  Cartel is in the business of providing "broker

price opinions" ("BPOs") through a nationwide network of real estate brokers and agents.  This

information is used by financial institutions for purposes of security valuation.  The Complaint

generally alleged that then-Defendants Ocwen Financial Corporation ("OFC"), its subsidiaries

Ocwen Realty Advisors ("ORA") and Ocwen Technology Exchange ("OTX") (collectively the

"Ocwen Defendants" or "Ocwen"), and individual Defendants William Krueger, Wiliam Erbey,

---

[1]Cartel was represented at the outset of the litigation by J. Mark Smith from Dorr, Carson, Sloan and Birney, P.C, and later Pendleton, Friedberg, Wilson & Hennessey, P.C.  On February 11, 2003, Mr. Smith withdrew from the case and Cartel continued to be represented by counsel from Jacobs Chase Frick Kleinkopf & Kelley, LLC.  On January 21, 2004, the district court allowed the attorneys from Jacobs Chase Frick Kleinkopf & Kelley, LLC to withdraw as Cartel's counsel.  Glenn W. Merrick and Lee K. Goldstein entered their appearances as counsel for Cartel on February 25, 2004.  Ms. Goldstein withdrew from the case on April 2, 2005.

John Erbey and Rita Holland misappropriated trade secret information developed by Cartel, namely the identities of Cartel's trained brokers.  Cartel further claimed that OTX breached the terms of a confidentiality agreement by misappropriating Cartel's trade secrets.[2]  Cartel filed its First Amended Complaint (doc. # 2) on November 8, 2001, and its Second Amended Complaint (doc. # 23) on February 5, 2002.  With these amendments, Plaintiff made minor modifications to its factual allegations and dismissed one of the individual defendants named in the original Complaint.

A Fed. R. Civ. P. 16(b) Scheduling Order entered by the court on May 28, 2002, adopted the parties' proposed deadline of July 15, 2002 for joining additional parties and amending pleadings.  This court also accepted the parties' proposed discovery deadline of November 30, 2002, and dispositive motion deadline of January 15, 2003.  These deadlines subsequently were extended on several occasions on motion by one or more of the parties.

Discovery in this case has prompted extensive motion practice.  For example, on January 29, 2003, Defendants filed a Motion to Strike Plaintiff's Expert Designations (doc. # 105).  Defendants challenged Cartel's expert designation of Christina Teahan, arguing that she did not have the requisite experience to be qualified as an expert, that her theories had never been subjected to peer review, her proposed testimony would be irrelevant, and her most recent report was untimely.  Ocwen also opposed the expert designation of James TenBrook, on the grounds that his first expert report addressed claims not properly before the court and his second report was untimely.  During a hearing on April 11, 2003 (doc. # 159), this court denied Defendants'

---

[2]A fuller explication of the parties' business endeavors and the allegations in this case are set out in the Tenth Circuit's Order and Judgment in *Cartel Asset Management v. Ocwen Financial Corp.*, 249 Fed. Appx. 63, 67-73 (10th Cir. 2007).

Motion to Strike as to Mr. Tenbrook, and granted in part and denied in part the Motion to Strike as it related to Ms. Teahan.

Defendants filed an Objection to Magistrate Judge's Ruling on Motion to Strike Plaintiff's Expert Designations (doc. # 165) on April 25,2003.  That objection was overruled by the district court on December 30, 2003 (doc. # 216).

On March 12, 2003, Plaintiff moved to compel (doc. # 140) responses to Cartel's Second Set of Discovery.  I granted in part and denied in part Cartel's Motion to Compel Responses to Second Set of Discovery on April 16, 2003 (doc. # 164).  Defendants filed Objections to Magistrate Judge's Ruling on Plaintiff's Motion to Compel (doc. # 167) on April 30, 2003.  The district court overruled those objections during a hearing (doc. # 216) on December 30, 2003.

Defendants filed a Motion for Order Compelling Plaintiff to Provide Disclosures and Discovery Responses on Damages (doc. # 149) on March 26, 2003.  I denied that motion without prejudice on April 16, 2003 (doc. # 164).

On February 20, 2004, the parties filed a Joint Status Report (doc. # 230) in response to inquiries from this court during a status conference on February 12, 2004.  As summarized in the Joint Status Report, this court had asked counsel to provide "an assessment as to what additional discovery Cartel believes is necessary, why it is necessary, and why it has not been completed before now."  Having just entered his appearance on behalf of Plaintiff, Mr. Merrick indicated that he wished to take three fact depositions, as well as a Rule 30(b)(6) deposition of Ocwen Federal Bank FSB ("OFB"), along with an accompanying request for "the designee to produce no more than 10 (ten) distinct categories of documents."  *See* Joint Status Report, at 4.  Mr. Merrick suggested that the requested discovery was necessary because "Cartel's prior counsel

4

was precluded . . . from pursuing any meaningful discovery from OFB on the ground that OFB

was not a named party" and because he was "very concerned about the documentary discovery,

or lack of it, that Plaintiff's former counsel received from the Defendants." *Id.* at 4 and 5.  Not

surprisingly, the Ocwen Defendants disputed the latter assertions, arguing instead that Cartel's

failure to take the desired depositions before the discovery deadline "was solely due to its own

lack of diligence." *Id.* at 10.  As of the date of the parties' Joint Status Report, a seven-day trial

in this case was set to begin on June 28, 2004.

In the wake of the parties' Joint Status Report and a status conference on March 3, 2004,

I issued an Order allowing Cartel to take the three "preservation" depositions it had requested

and a four-hour Rule 30(b)(6) deposition of Ocwen Federal Bank FSB.  *See* Minute Order (doc.

235), dated March 5, 2004.[3]  The Ocwen Defendants promptly filed a Rule 72 Objection to my

ruling, which was overruled by the district judge on March 10, 2004.  *See* Order Regarding

Defendants' Objections to the Magistrate Judge's Ruling on Plaintiff's Request to Extend the

Discovery Date (doc. # 240).

On April 28, 2004, Plaintiff Cartel filed a Motion to Compel Production of Documents

(doc. # 256).  In this motion, Cartel referenced the April 8, 2004 Rule 30(b)(6) deposition of

Ocwen Federal Bank FSB, during which the designated witness was asked various questions

related to:

> (i) the historical and current savings to OFB from using an in-house valuation
> shop, Ocwen Realty Advisors ("ORA"), to provide residential BPOs rather than a
> national vendor; (ii) the historical and current charges by OFB and/or ORA to

---

[3]Cartel's Rule 30(b)(6) deposition of Ocwen Federal Bank FSB addressed, *inter alia*,
"Defendants' profits and/or losses and revenues resulting from residential BPOs purchased from
national vendors and/or brokers from January 1, 1997 to the present."

> affiliated clients and outside third party clients for residential BPOs; (iii) the
> historical revenue and profits/losses realized by OFB and/or ORA from the resale
> of residential BPOs generated by national vendors and retail vendors; (iv) the
> prices paid by OFB and/or ORA for residential BPOs in Deposition Exhibit 4 and
> 5; and (v) the historical and current cost/resale revenue of OFB/ORA for
> residential BPOs (broken down by vendors identified in Deposition Exhibit 4)
> and the historical and current profit/loss realized from such resale.

*See* Plaintiff's Motion to Compel Production of Documents, at 4-5 (internal citations omitted).

During the same Rule 30(b)(6) deposition, the OFB designee apparently testified that ORA's

financial statements did not itemize the cost/resale revenue by BPOs.  Cartel moved to compel

the production of all documents reviewed by the Rule 30(b)(6) witness in preparation for the

deposition.  Plaintiff also moved for production of information redacted from documents

produced by Defendants during discovery.

The Ocwen Defendants filed a Response to the Motion to Compel (doc. # 262) on May

11, 2004.  According to Defendants, "the information and documents . . . that Cartel seeks from

the Bank through the Motion to Compel (a) have already been produced to Cartel, (b) are not

reasonably available to the Bank, or (c) were not properly requested through Cartel's discovery

requests or its Rule 30(b)(6) designation."  *See* Defendants' Response, at 2.  Moreover,

Defendants stated that Ocwen Federal Bank FSB "does not charge its customers for BPOs alone,

or break out charges for BPOs in its invoices" and "does not track its revenues, profits or losses

attributable to the 'resale' of BPOs, because the Bank does not provide BPOs, without more, to

any customer."  *Id.* at 6 and 7.

In granting in part the Motion to Compel, I required the Ocwen Defendants to produce

unredacted copies of all documents produced by Defendants in redacted form on or after

December 30, 2003.  *See* Minute Order (doc. # 268), dated May 14, 2004.

As a final volley in the pretrial process, on May 12, 2004, Defendants filed a Motion to Strike Plaintiff's Untimely Third Expert Report on Damages (doc. # 263).  In this motion, Defendants argued that "Cartel's third set of attorneys and Cartel's damages expert, James TenBrook" had changed Plaintiff's theory of damages "more than <u>eighteen</u> <u>months</u> after the deadlines for submission of expert reports and less than <u>seven</u> <u>weeks</u> before trial." *See* Motion to Strike, at 1 (emphasis in original).  Defendants insisted that "all the information underlying the Untimely Report was either in the possession of Cartel, or available to Cartel had Cartel exercised reasonable diligence in taking discovery from Defendants, as of the October 7, 2002 deadline for Cartel's expert reports." *Id.* at 2.

Cartel's Response in Opposition to the motion to strike Mr. TenBrook's latest expert report insisted that the supplemental report was based upon "information which Ocwen failed to produce until March and April of 2004 (and in fact represented did not exist)." *See* Plaintiff's Response in Opposition (doc. # 272), filed on May 21, 2004.  After noting that this court had required the Ocwen Defendants to produce additional financial documents at the conclusion of a hearing on December 30, 2003, Cartel explained

> In response to the Court's Order, Ocwen produced some documents on March 12, 2004 and more documents on April 1, 2004 (more than a month after the February 15th deadline set by the Court).  These documents, totaling over a thousand pages, included some of the information that Cartel needed to calculate its disgorgement damages. . . . Additional needed documents were produced at the Fed.R.Civ.P. 30(b)(6) deposition of Ocwen Federal Bank FSB, held on April 8, 2004 (held after the Court overruled Ocwen's objections to the deposition).  Once those documents had been produced by Ocwen, Cartel's counsel advised Ocwen's counsel that Cartel would be updating its expert report to include the disgorgement damages.  The supplemental report was issued on May 6, 2004.

*Id.* at 4.  The district court denied this Motion to Strike with a written Order (doc. # 277) dated

May 27, 2004.[4]

Trial commenced on June 30, 2004.  During the period between January 29, 2003 and May 12, 2004, the parties filed no less than five motions to compel or strike.  During the same period, Defendants filed three separate Objections under Rule 72, none of which were sustained.

At the conclusion of the trial, the jury found for Cartel and against Defendant Ocwen Federal Bank FSB on the claim of misappropriation of trade secrets and awarded compensatory damages of $4,900,000 and punitive damages of $3,900,000.  The jury also found in favor of Cartel and against Defendant Ocwen Technology Xchange on the claims of breach of contract and fraud, and awarded nominal damages of $1 and actual and punitive damages of $520,000, respectively.  *See* Judgment (doc. # 326), dated July 12, 2004.

Judge Figa[5] entered an Order Granting New Trial on Damages (doc. # 328) on July 16, 2004, after concluding that

> the damages evidence based on Mr. TenBrook's testimony should have been excluded as speculative and unwarranted under *Daubert*.  There was no proper nexus between the amounts awarded and the credible evidence in the case as to damages consistent with the three claims at issue.

*See* Order Granting New Trial on Damages (doc. 16, 2004), at 10.

Additional post-trial briefing ensued, culminating with an Order on Pending Motions (doc. # 379) on November 3, 2004 and entry of a Final Judgment (doc. # 378) on November 4,

---

[4]Intent on leaving no stone unturned, on June 16, 2004, the Ocwen Defendants filed their Motion for Reconsideration of Denial of Motion to Strike Plaintiff's Untimely Third Expert Report on Damages (doc. # 294).  The district judge denied this motion on the opening day of trial.

[5]On October 29, 2003, this case was transferred to the Honorable Phillip S. Figa following his appointment to the District Court.  Upon the passing of Judge Figa, the case was reassigned to Judge Robert E. Blackburn on January 8, 2008.

2004.  Judge Figa concluded that Plaintiff Cartel's failure "to link the misappropriation of specific trade secrets it possessed to discrete identifiable benefits to [Ocwen Federal Bank FSB] through three iterations of damages reports was fatal."  The district court further found no basis for a new trial because "[t]here is no alternative supportable damages theory upon which the Court could conduct a new trial on the misappropriation of trade secrets claim."  *See* Order on Pending Motions, at 8 and 11-12.  The district court entered judgment in favor of Cartel and against Defendant Ocwen Federal Bank FSB in the amount of $1.00 for misappropriation of trade secrets and $1.00 for punitive damages; against Defendant Ocwen Technology Xchange, Inc. in the amount of $1.00 for actual damages solely for breach of contract; and against Defendant Ocwen Technolgy Xchange, Inc. in the amount of $260,000 in actual damages on the fraudulent inducement claim and $260,000.00 in punitive damages.  The parties filed timely appeals.

The Tenth Circuit entered an Order and Judgment on September 18, 2007, affirming the entry of judgment in favor of Cartel and against Ocwen Federal Bank FSB on the issue of liability and remanded the case back to the district court for a new trial on damages.  *See Cartel Asset Management v. Ocwen Financial Corp.*, 249 Fed. Appx. at 63.  While the appellate court found no abuse of discretion in the determination that Mr. Tenbrook's testimony was speculative and inadmissible, it also found that the district court erred in determining that Cartel's damages claim failed "because it had shown no direct evidence of [Ocwen Federal Bank FSB's] use of any name on Cartel's list to purchase and resell a BPO."  *Id.* at 75.  To the contrary, the Tenth Circuit held that the evidence at trial "was sufficient for the jury to reasonably infer the Bank's use of the names on Cartel's list generated either a savings or a profit for the Bank, establishing

the traceability of the damages." *Id*. at 76.  At a retrial, "Cartel must show the Bank benefitted

from the misappropriation of Cartel's information and also establish the amount of the benefit to

a reasonable certainty." *Id.* at 74.

Shortly after returning to the district court, Cartel filed a Motion To: (i) Conduct Limited

Additional Discovery, (ii) Require Defendants to Supplement Disclosures and Discovery

Responses, and (iii) Reserve the Right to Introduce Different and/or Additional Evidence at

Retrial (doc. # 456).  As Cartel characterized the case on remand, "the sole damage issue is the

magnitude of the benefit realized by Ocwen Federal Bank [FSB] (the 'Bank'), and its successors

and assigns, as a result of the wholesale and illicit theft of Cartel's valuable trade secret by the

Bank."

> 9.      The additional discovery proposed by Cartel would be limited to
> the "damages issue" (the "unjust enrichment," "ill-gotten gains" and/or "benefit"
> derived by the Bank from the blatant theft of Cartel's trade secrets).  It is
> anticipated that the discovery could be completed within 60-75 days, depending
> upon the availability of witnesses and would be limited to:
>
> A.      No more than 10 interrogatories served by Cartel on each
>         defendant;
>
> B.      No more than 10 document requests served by Cartel on each
>         defendant;
>
> C.      No more than 4 (party and non-party) non-expert depositions
>         conducted by Cartel; and
>
> D.      A deposition by Cartel of each expert that any of the Defendants
>         will call at trial.

*See* Plaintiff's Motion To: (i) Conduct Limited Additional Discovery, at 5-6.  As one might

expect, Plaintiff's request met with strong opposition from the Ocwen Defendants.  Ocwen took

the position that further discovery was unnecessary because the evidence at the second trial

would be limited to the testimony and documents identified in the parties' Amended Final

Pretrial Order entered on June 4, 2004 (doc. # 281).  *See* Defendant Ocwen Federal Bank FSB's

Response to Plaintiff's Motion to Conduct Additional Discovery (doc. # 461).

During a hearing on March 24, 2008, this court denied Cartel's motion without prejudice.

As to Plaintiff's request for an order requiring Defendants to supplement their previous

discovery response, I concluded that Fed. R. Civ. P. 26(e) imposed on the parties an independent

obligation to supplement discovery responses which made a further order superfluous.  *See*

*Harvey v. United States*, 2005 WL 3164236, *11 (D. Colo. 2005).  I also denied Plaintiff's

request for leave to introduce different or additional evidence at a new trial, finding that issue

was more properly addressed to the district judge in a separate submission.  Finally, I denied

without prejudice Cartel's motion to conduct limited additional discovery.  Plaintiff's counsel

was advised to resubmit his motion and attach thereto the specific discovery requests his client

wished to serve.  *See* Transcript of Hearing (doc. # 470) at 49-52.  *See also* Minute Order dated

March 27, 2008 (doc. # 465).

Cartel filed a Renewed and Revised Motion to Conduct Additional Discovery (doc. #

466) on March 28, 2008, to which it attached proposed Interrogatories and Request for

Production of Documents Prior to Retrial (doc. # 466-2).  Defendants filed their Response (doc.

# 472) on April 4, 2008 and Plaintiff served a Reply in Support of "Revised and Renewed

Motion

to Conduct Additional Discovery" (doc. # 475) on April 21, 2008.[6]

I held a hearing on Plaintiff's Renewed and Revised Motion to Conduct Additional Discovery on May 16, 2008.  *See* Transcript of Hearing (doc. # 487).  Although Cartel's motion requested leave to conduct "limited additional discovery," the proposed discovery requests proffered with the motion belied that claim.  For example, Cartel's proposed Request for Production No. 2 sought "for the period 2004 to present . . . all documents relating to any major actions or programs adopted to increase revenue, reduce cost or enhance profitability of the BPO product line/business."  As this court pointed out during the May 16, 2008 hearing, the same discovery requests defined the phrase "relating to" to mean

> any of the following (in whole or in part): supports, proves, tends to prove, is associated or affiliated with, is connected with, corresponds to, complements, provides background for, evidences, embodies, includes, comprises, refers to, explains, mentions, describes, contradicts or tends to contradict.

*See* Exhibit A (doc. # 466-2) attached to Plaintiff's Revised and Renewed Motion.  Measured by any standard, this definition rendered the proffered discovery requests overbroad.  *See, e.g.*, *In re Urethane Antitrust Litigation*, 2008 WL 110896, *1 (D. Kan. 2008) (holding that a discovery request is overly broad and unduly burdensome on its face if it uses an "omnibus term such as

---

[6]The Ocwen Defendants filed a Motion to Strike Plaintiff's Reply in Support of "Revised and Renewed Motion to Conduct Additional Discovery" (doc. # 476) on April 24, 2008, arguing that Plaintiff's submission was contrary to comments this court made during a hearing on March 24, 2008 (doc. # 476-2).  It must have been apparent that Plaintiff's Reply merely cited the same cases and repeated the same arguments advanced in Cartel's initial motion.  Even a modicum of common sense should have convinced Defendants simply to disregard the Reply, particularly in light of the court's order setting a hearing on Plaintiff's Renewed and Revised Motion. However, consistent with the history of this case, Defendants' Motion to Strike precipitated a Response in Opposition (doc. # 478) and a Reply in Support of Motion to Strike (doc. # 479). This court can only hope that counsel did not charge their respective clients for this patently superfluous and unhelpful briefing.

'relating to'" because "such broad language 'make[s] arduous the task of deciding which of numerous documents may conceivably fall within its scope); *Twigg v. Pilgram's Pride Corp.*, 2007 WL 676208, *9 (N.D. W.Va. 2007) (held that a request for production that included "all other related documents" failed to comply with the "reasonable particularity" requirement of Rule 34; the court observed that such a formulation would require the responding party to "engage in guessing games"); *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992) ("broad and undirected requests for all documents which relate in any way to the complaint are regularly stricken as too ambiguous")

More importantly, I expressed the view that Cartel's proposed discovery might well exceed the Tenth Circuit's mandate in remanding the case for a new trial.  This court recognized, however, that if the district judge signaled an intention to allow post-2004 evidence as to the benefits derived by the Ocwen Defendants, then Plaintiff would be a much stronger position to seek additional discovery.  *See* Transcript of Hearing on May 16, 2008, at 37-38.  Pending further guidance from the district court, I denied Plaintiff's Revised and Renewed Motion without prejudice.

Cartel filed a Motion for Direction (doc. # 483) on May 27, 2008, followed by Defendants' Motion for Ruling Limiting Scope of Second Trial (doc. # 484) on June 16, 2008. On February 3, 2009, Judge Blackburn issued an Order Concerning Scope of Second Trial (doc. # 492).  *See Cartel Asset Management v. Ocwen Financial Corp.*, 2009 WL at 256466.  After addressing the current posture of the litigation and the Tenth Circuit's Order and Judgment, Judge Blackburn concluded, in pertinent part, that

> Cartel is not limited on re-trial to proving unjust enrichment damages only within the four year window proposed by Tenbrook.. . . Nothing in the Tenth Circuit's

opinion indicates that the Tenth Circuit limited Cartel to evidence relevant to the four year window on retrial. . . . Cartel proposes to examine additional evidence concerning events that occurred during and following the first trial to determine if it can demonstrate damages that accrued during and after the first trial. . . . Following the Tenth Circuit's remand . . . , Cartel seeks to examine additional evidence to determine if the relevant damages time window extends beyond the four year time window proposed by TenBrook at the first trial. . . . In view of the Tenth Circuit's direction that Cartel have a chance to correct its evidentiary shortcomings by establishing a basis for a relevant time window in which to calculate damages, I conclude that it would create manifest injustice to prohibit Cartel from examining the additional evidence it seeks to examine. . . . Further, the evidence Cartel seeks to examine was developed during or after the first trial so this evidence was not readily accessible or known at the time of the first trial.

*Id.* at *3.  Accordingly, Judge Blackburn held that Cartel would be permitted to present evidence at the second trial concerning the unjust enrichment of Defendant, Ocwen Federal Bank FSB, from the date of the first trial in this case, June 30, 2004, and into the future.  *Id.* at *4.

In light of this Order, this court held a status conference on February 27, 2009, at which time I directed Cartel to serve Defendants with interrogatories and requests for production on or before March 2, 3009, and for Defendants to satisfy their obligations under Rule 26(e) on or before April 27, 2009.  *See* Minute Order (doc. # 495).  During the same status conference, I declined defense counsel's invitation to edit or parse Cartel's proposed discovery requests, suggesting instead that Defendants answer Cartel's discovery requests subject to whatever objections Defendants believed were properly asserted under the Federal Rules of Civil Procedure.  *Cf. Dombach*, 1998 WL 695998 at *7 (it is not the court's responsibility to redefine and redraft discovery requests that are obviously overbroad).  During the same hearing, defense counsel assured the court that he agreed with my observation that the parties should "avoid fighting simply for the sake of fighting."

Cartel served its Interrogatories and Request for Production of Documents Prior to

Retrial (hereinafter "Plaintiff's First Requests") on March 2, 2009.  Plaintiff filed a Motion to

Compel Immediate and Complete Responses (doc. # 501) on April 20, 2009, after Defendants

allegedly failed to serve proper discovery.  From the briefs and exhibits submitted by the parties,

it is possible to establish the following chronology of pertinent events.  On April 15, 2009, the

Ocwen Defendants served their Responses to Plaintiff's First requests.  *See* Exhibit B attached to

Plaintiff's Motion to Compel (doc. # 501-3).  These responses were not accompanied by the

signed verification required by Fed. R. Civ. P. 33(b)(5).[7]  On April 16, 2009, defense counsel

sent an e-mail advising Mr. Merrick that "the discovery responses I provided to you yesterday

contain incorrect information.  I will provide you with revised responses as soon as practicable."

*See* Exhibit C attached to Plaintiff's Motion to Compel (doc. # 501-4).  The Ocwen Defendants'

discovery responses were not served until May 8, 2009.  Plaintiff's attorney sent a letter to

opposing counsel on May 19, 2009 complaining that the revised discovery responses were still

deficient.

    After briefing by the parties, the court addressed Plaintiff's motion to compel at a hearing

on June 17, 2009.  At the conclusion of that hearing, I required the Ocwen Defendants to provide

supplemental responses to Cartel's First Requests that fully complied with the requirements of

Fed. R. Civ. P. 26, 33 and 34.  The court specifically held that the boilerplate objections set forth

in Defendants' May 8, 20009 discovery responses were ineffective and therefore had been

waived.  Defendants were required to provide narrative responses to interrogatories unless they

could demonstrate that directing Cartel to specific enumerated documents would impose no

---

[7]During the hearing on June 17, 2009, defense counsel explained this omission by stating
that "the practice in this case, as in so many cases, is to exchange unsigned interrogatory
responses, Cartel's done the same thing throughout the case, and then supplement with a signed
verification page."  *See* Transcript of Hearing (doc. # 514) at 11-12.

greater burden on Cartel than on Defendants pursuant to Fed. R. Civ. P. 33(d).  *Cf. T.N. Taube Corp. v. Marine Midland Mortgage Corp.*, 136 F.R.D. 449, 452 (W.D.N.C. 1991) (holding that under Rule 33(d), the responding party may not avoid narrative responses by imposing on the interrogating party "a mass of business records from which answers cannot be ascertained by someone unfamiliar with them").

Plaintiff's Second Set of Interrogatories and Requests for Production of Documents Prior to Retrial (hereinafter "Plaintiff's Second Requests") were served on or about June 10, 2009. The Ocwen Defendants filed the pending Motion for Protective Order (doc. # 518) regarding those discovery requests on July 13, 2009.  Plaintiff filed its Motion to Compel and for Contempt Remedy (doc. # 529) on July 22, 2009, seeking to compel responses to its First Requests.  The court heard argument on these motions during a hearing on August 21, 2009.

On September 18, 2009, the Ocwen Defendants filed an Advice of Submission of Discovery Responses (doc. # 544), stating that Defendants had served their Third Set of Supplemental Responses to Plaintiff's First Requests on September 9, 2009, *see* doc. # 545 (sealed), and their Responses to Plaintiff's Second Requests on September 18, 2009.  *Id.* Defendants insist their supplemental discovery responses render moot Cartel's Motion to Compel and for Contempt Remedy, save for a continuing dispute over the sufficiency of Ocwen's response to Interrogatory No. 1(a) of the First Requests.  Defendants also maintain their supplemental responses provide the information and documents responsive to Cartel's Second Requests to which Defendants do not object.  Not surprisingly, Cartel takes a contrary position. *See* Plaintiff's Response to Defendants' "Advice of Submission of Discovery Responses" (doc. # 551).

**ANALYSIS**

Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information. *United States ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002). To that end, Rule 26(b) permits discovery "regarding any matter . . . that is relevant to the claim or defense of any party" or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." *See* Fed.R.Civ.P. 26(b)(1). *See also Williams v. Board of County Commissioners*, 192 F.R.D. 698, 702 (D. Kan. 2000) (requests for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim or defense).

There are limits, however, on the scope of discovery. A court has the discretion to tailor discovery to the circumstances of the case at hand, to adjust the timing of discovery, and apportion costs and burdens in a way that is fair and reasonable. *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 42 (D. Md. 2000). Rule 26(b)(2)(C)) of the Federal Rules of Civil Procedure requires the court to limit the frequency or extent of use of discovery methods where (1) the discovery sought is unreasonably cumulative or duplicative; (2) the party seeking discovery has had ample opportunity by discovery to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *See also Intervet, Inc. v. Merial Ltd.*, 252 F.R.D. 47, 49 (D. D.C. 2008) ("[A]ll discovery is subject to the balancing test in Rule 26(b)(2)(C)(iii) of the Federal Rules of Civil Procedure that

requires a court to limit the discovery 'otherwise allowed by these rules' if the burden outweighs its likely benefit, considering (inter alia) the needs of the case, and the importance of the discovery is resolving the issues."); *Qwest Communications International, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) ("in every case, the court has the discretion, in the interests of justice, to prevent excessive or burdensome discovery"). Rule 26(g) also serves to restrain excess discovery by requiring counsel to certify that discovery requests are consistent with the Federal Rules of Civil Procedure and warranted by existing law, are not interposed for an improper purpose, and are neither unreasonable or unduly burdensome or expensive. *See* Fed. R. Civ. P. 26(g)(1)(B).

The Federal Rules impose concomitant obligations on a party responding to discovery requests. The certification requirement under Rule 26(g)(1) applies equally to counsel for the responding party. Discovery requests must be given a reasonable construction, and a responding party is not permitted to conjure up ambiguity where there is none. *King-Hardy v. Bloomfield Board of Education*, 2002 WL 32506294, *5 (D. Conn. 2002). Objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections. *See, e.g., Ayers v. Continental Casualty Co.*, 240 F.R.D. 216, 221 (N.D. W.Va. 2007); *Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94, 109 (W.D.N.Y. 2000). "[A]n objection to requested discovery may not be made until a lawyer has 'paused and consider[ed]' whether based on a 'reasonable inquiry,' there is a 'factual basis [for the] . . . objection." *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008). Most importantly, Rules 33 and 34 require a party to answer to the extent a discovery request is not objectionable. *See, e.g, Doe v. National Hemophilia Foundation*, 194 F.R.D. 516, 520 (D. Md. 2000). The

foregoing discovery standards provide a legal backdrop for the motions presently before the court.

A.      *Defendants' Motion for Protective Order*

The Ocwen Defendants have moved, pursuant to Fed. R. Civ. P. 26(b)(2)(B), 26(b)(2)(C) and 26(c), for a protective order limiting and striking portions of Plaintiff's Second Requests. A court may, for good cause, enter an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c). The party seeking a protective order has the burden of demonstrating good cause, *see, e.g., Semsroth v. City of Wichita*, 239 F.R.D. 630, 633 (D. Kan. 2006), and cannot sustain that burden simply by offering conclusory statements. *See Tolbert-Smith v. Bodman*, 253 F.R.D. 2, 4 (D.D.C. 2008); *Exum v. United States Olympic Committee*, 209 F.R.D. 201, 206 (D. Colo. 2002). "A party moving for a protective order must make a 'particular and specific demonstration of fact' in support of its request." *Aikens v. Deluxe Financial Services, Inc.*, 217 F.R.D. 533, 536-37 (D. Kan. 2003) (holding that where a motion for protective order is based on a claim of undue expense or burden, the moving party must submit affidavits or other detailed explanations as to the nature and extent of the burden or expense). *Cf. Trinos v. Quality Staffing Services Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) ("courts should only limit discovery 'based on *evidence* of the burden involved, not on a mere recitation that the discovery request is unduly burdensome") (emphasis in original).

Here, Defendants contend that the contested interrogatories and requests for production exceed the discovery permitted by Judge Blackburn's February 3, 2009 Order, impose unreasonable expense and burden on the Ocwen Defendants, and require Defendants to produce

nonexistent information and documents.  Defendants further maintain that Plaintiff's Second

Requests seek information that is unreasonably cumulative or duplicative, or information not

reasonably calculated to lead to the discovery of admissible evidence.

    1.    <u>The Scope of Discovery</u>

Defendants contend that Cartel's Second Requests exceed the scope of permissible

discovery established by Judge Blackburn's February 3, 2009 Order, to the extent that Plaintiff

seeks information and material for the period prior to June 30, 2004.  Cartel construes the

February 3, 2009 Order more narrowly, suggesting that Judge Blackburn "simply [did] not

address the question of whether [Cartel] is permitted to propound discovery relating to the 4-year

period prior to the first trial."  *See* Plaintiff's Response in Opposition, at 2.  I conclude that

Plaintiff's position is not supported by the full record.

In remanding this case to the district court for a new trial on damages, the Tenth Circuit

acknowledged the trial court's discretion to determine whether and to what extent it would re-

open the record.  *See Cartel Asset Management v. Ocwen Financial Corp.*, 249 Fed. Appx. at 82.

The appellate court observed that "if a party makes a timely motion to produce new and material

evidence which was not otherwise readily accessible or known, the court should, within the

exercise of discretion, consider whether denial of the new evidence would create a manifest

injustice. . . . [C]ommon sense should control."  *Id.* citing *Cleveland v. Piper Aircraft Corp.*, 985

F.2d 1438, 1450 (10th Cir. 1993).

On May 27, 2008, Cartel filed a Motion for Direction from District Court Respecting

Plaintiff's Request to Conduct Additional Discovery Relating to the Period Following the Initial

Trial (doc. # 483).  In the opening paragraph of its motion, Plaintiff stated that it "seeks

information in discovery respecting the 'ill-gotten gain," 'unjust enrichment' or 'benefit' that was realized by Ocwen Federal Bank, FSB (the 'Bank') from the wholesale and illicit theft of Cartel's valuable trade secret. *The discovery is to be limited to the period from and after the original trial in the captioned case,* and the purpose of the proposed additional discovery is to allow the full and fair presentation of evidence on unjust enrichment damages at the retrial." *See* Plaintiff's Motion for Direction, at 1-2 (emphasis in original). After noting the Tenth Circuit's quotation from *Cleveland v. Piper Aircraft Corp.*, 985 F.2d at 1450, Cartel advised the district court that the specific information sought through additional discovery was "new and material evidence which was not otherwise readily accessible or known." *Id.* at 5. Plaintiff's counsel was quite explicit in describing the discovery he wished to pursue:

> The information sought is limited to the period 2004 to the present (at and following the initial trial). It was information that is "new" and "was not otherwise reasonable accessible or known" at the time of the initial trial.

*Id.* at 6. Cartel closed its motion by requesting an Order allowing discovery "relating to the ill-gotten gains, unjust enrichment and benefit realized by the Bank . . . from its theft of Cartel's trade secret during the period at and following the trial." *Id.*[8]

Judge Blackburn's February 3, 2009 Order granted Plaintiff the specific relief requested, that is to develop "additional evidence concerning events that occurred during and following the first trial" because "this evidence was not readily accessible or known at the time of the first

---

[8]At an earlier hearing on March 24, 2008, Plaintiff's counsel advised this court that "there have been a series of developments with [Ocwen Federal Bank FSB] which have occurred in the period post-theft, post-trial. . . . [W]e would like discovery into the issues which give rise to and which are probative of unjust enrichment damages which accrued post-trial." Mr. Merrick further stated that "[t]he issue about conducting discovery is targeted simply at the issue of what information is now available that was not available then." *See* Transcript of Hearing (doc. # 470), at 45-46 and 64.

trial." Under any reasonable construction, the district judge's Order contemplated that Plaintiff's additional discovery would seek to elicit "additional evidence to determine if the relevant damages time window extends beyond the four year time window proposed by TenBrook at the first trial."

Apart from the explicit direction provided in Judge Blackburn's Order, the Ocwen Defendants insist that Cartel's attempt to pursue discovery related to the period prior to June 30, 2004 contravenes Rule 26(b)(2)C)(ii), which requires the court to limit discovery if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." *See* Fed. R. Civ. P. 26(b)(2)(C)(ii). As noted previously, Plaintiff had a full opportunity to pursue discovery prior to the initial trial. Cartel argues, in response, that it "likely" was denied an adequate opportunity to conduct discovery because "the Ocwen Defendants have been fundamentally dishonest through this case." *See* Plaintiff's Response, at 3. Plaintiff cannot overcome the clear mandate of Rule 26(b)(2)(C)(ii) simply by casting aspersions on Defendants or their counsel.

Cartel also unsuccessfully argues that Defendants' recent efforts to confine discovery to the period after June 30, 2004 are belied by Owen's own discovery requests which Plaintiff characterizes as seeking information relating to the period prior to the first trial. *Id.*, at 2. In fact, Plaintiff concedes that during a hearing on July 6, 2009, this court struck Defendants' written discovery with leave to re-serve requests that were more direct and focused. *See* Transcript of Hearing on July 6, 2009 (doc. # 516), at 31-32. I conclude that Ocwens' Second Set of 2009 Discovery Requests to Plaintiff, *see* Exhibit D attached to Defendants' Motion for Protective Order, does not exceed the scope of Judge Blackburn's February 3, 2009 Order or

open the door for Plaintiff's Second Requests.

After carefully reviewing the record, I find no legal or factual justification for re-opening discovery as to the period prior to June 30, 2004. Plaintiff, through its succession of counsel, had ample opportunity to conduct discovery and pursue available discovery remedies prior to the initial trial. The Tenth Circuit's Order and Judgment acknowledged the possibility of re-opening the record to prevent manifest injustice or to satisfy the requirements of basic fairness. I conclude that Cartel's desire to plow over old ground or cure deficiencies in past discovery requests falls short of either standard. I will grant Defendants' Motion for Protective Order to the extent that Cartel's Second Set of Interrogatories and Requests for Production of Documents Prior to Retrial seeks information and materials for the period prior to June 30, 2004.[9]

### 2.   Cumulative or Duplicative Discovery

Defendants' Motion seeks relief to the extent that Cartel allegedly is seeking information that is cumulative or duplicative of discovery already produced, citing in support of this argument five discrete categories of information. Rule 26(b)(2)(C)(i) directs the court to limit discovery requests that are "unreasonably cumulative or duplicative." *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

Cartel responds that "[a] review of [its] First Discovery with [its] Second Discovery demonstrates that any overlap is, at most, marginal and does not constitute cumulation or duplication of discovery." *See* Plaintiff's Response, at 7-8. Plaintiff proposes that any unintended duplication can be avoided if the Ocwen Defendants simply "refer[ ] to their previous responses, and provide[ ] any new/additional information necessary to respond comprehensively

---

[9]Nothing in this Order should be construed as overriding Defendants' ongoing obligation to supplement prior discovery responses pursuant to Fed. R. Civ. P. 26(e).

to the later discovery served by" Cartel. *Id.* at 8. This is an eminently reasonable suggestion that could have implemented by the parties without the necessity for judicial intervention.

Rule 26(c)(1) requires the moving party to certify that they have in good faith conferred or attempted to confer with the opposing party in an effort to resolve the dispute without court action. The obligation to "meet and confer" is no less important or mandatory in cases characterized by recurring or fractious discovery disputes. Similarly, the "meet and confer" requirement should not be overridden by counsels' decision to approach discovery as a war of attrition. *Cf. Mirbeau of Geneva Lake, LLC v. City of Lake Geneva*, 2009 WL 3347101, *4 (E. D. Wis. 2009) ("needless resources are wasted when the parties, in lieu of open and honest communication, lean on the court to resolve spats that could easily be settled with a simple phone call or an email to opposing counsel"); *Pulsecard, Inc. v. Discover Card Services, Inc.*, 168 F.R.D. 295, 302 (D. Kan. 1996) ("Failure to confer or attempt to confer may result in unnecessary motions. When the court must resolve a dispute that the parties themselves could have resolved, it must needlessly expend resources that it could utilize elsewhere.").

Civil litigation, particularly with the advent of expansive e-discovery, has simply become too expensive and too protracted to permit superficial compliance with the "meet and confer" requirement under Rules 26(c)) and 37(a)(1) and (d)(1)(B). Over the course of this litigation, the court has held no less than eleven conferences or hearings on discovery-related matters and has been required to rule on innumerable discovery motions. On at least two occasions, the court has confronted with a dispute as trivial as whether a party should be permitted to file a reply brief. The court is left with the impression that counsel are searching for discovery disputes, rather than working cooperatively to avoid or defuse those disagreements. Given the talented attorneys

involved in this case, that development is regrettable.  This court has endorsed *The Sedona Conference Cooperation Proclamation* (2008) (available at http://wwwthesedonaconference.org/content/tsc_cooperation_proclamation) and its call for "cooperative, collaborative, [and] transparent discovery."   In my view, the *Cooperation Proclamation* correctly recognizes that while counsel are

> retained to be zealous advocates for their clients, they bear a professional obligation to conduct discovery in a diligent and candid manner. . . .  Cooperation does not conflict with the advancement of their clients' interests - it enhances them.  Only when lawyers confuse *advocacy* with *adversarial conduct* are these twin duties in conflict.

*See, e.g., Building Erection Services Co. v. American Buildings Co.*, 2010 WL 135213, *1 (D. Kan. 2010); *Oracle USA, Inc. v. SAP AG*, 2009 WL 3009059,*2 (N.D. Cal. 2009).  Counsel are on notice that, henceforth, this court will expect them to confer in good faith and make reasonable efforts to work together consistent with well-established case law and the principles underlying *The Cooperation Proclamation*.

    3.    Nonexistent Information and Documents

    In their Motion for Protective Order, Defendants proffer that they do not have information responsive to those portions of Interrogatory Nos. 1 and 2 that seek information for the years 1989 and 1999, or that portion of Interrogatory No. 3 encompassing 1999.  It is well-settled that a responding party's obligations under Rule 34 do not extend to non-existent materials.  *See, e.g., Thompson v. Lantz*, 2009 WL3157561, *1 (D. Conn. 2009) ("[A] party cannot be compelled to create, or cause to be prepared, new documents solely for their production.  Rule 34 only requires a party to produce documents that are already in existence.");
*Georgacarakos v. Wiley*, 2009 WL 924434, *2 (D. Colo. 2009) (noting that "if a requested

document is not in the possession of a party or non-party, such person need not create the non-existent document"); *Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 305, 310 (D.D.C. 2000) (a party is not required under Rule 34 to create new documents solely for their production). *See also Flying J, Inc. v. Pilot Travel Centers LLC*, 2009 WL 1835000, *2 (D. Utah 2009) (holding that a request for production "cannot require a responding party to compile and summarize" responsive data).

While Plaintiff characterizes Ocwen's argument as "trivial, *see* Plaintiff's Response, at 8, it does not provide any facts or legal authorities that would refute the position advanced in the Motion for Protective Order.  Accordingly, Defendants' Motion is granted to the extent that Plaintiff's Second Set of Interrogatories and Requests for Production of Documents Prior to Retrial seeks documents that no longer exist or would require Defendants to recreate responsive documents for the years 1998 or 1999.

    4.    <u>Unreasonable Burden and Expense</u>

Defendants specifically objected to Interrogatory Nos. 1, 2, 3, and 4, and Request for Production Nos. 1, 2, 3, 4, 5, 6, 7 and 8 on the grounds that they seek electronically stored information that is not "reasonably accessible because of undue burden or costs" or otherwise impose burdens and expense that outweigh their likely benefit.  The Ocwen Defendants ask this court to strike those requests entirely or grant them additional time to response.  Notably, for Interrogatory Nos. 1 and 2 and Request for Production Nos. 2, 4, 6, 7 and 8, Defendants requested an extension of time "up to and including July 20, 2009."

The discovery process necessarily imposes burdens on a responding party.  *See, e.g., Schartz v. Unified School District No. 512*, 1996 WL 741384, *2 (D. Kan. 1996) ("Discovery, by

its very nature, is inherently burdensome.  The question, however, is whether the discovery

unduly burdens . . . .").  *See also Kipperman v. Onex Corp.*, 260 F.R.D. 682, 698 (N.D. Ga.

2009) (noting that discovery imposes costs on the litigant from whom discovery is sought, the

party seeking discovery and the judicial system itself).  Rule 26(b)(2)(B) was adopted in 2006 in

response to the unique challenges associated with locating, retrieving, and providing discovery

of electronically stored information.  After December 2006, a party "need not provide discovery

of electronically stored information from sources that the party identifies as not reasonably

accessible because of undue burden or cost."  *See* Fed. R. Civ. P. 26(b)(2)(B).

A party seeking to invoke the protections of Rule 26(b)(2)(B), however, bears the burden

of persuasion.  As with a motion for protective order under Rule 26(c), this burden cannot be

sustained with bald generalizations.  Rather, "the responding party should present details

sufficient to allow the requesting party to evaluate the costs and benefits of searching and

producing the identified sources."  *Mikron Industries, Inc. v. Hurd Windows & Doors, Inc.*, 2008

WL 1805727, *1 (W.D. Wash. 2008).  *See also In re Zurn Pex Plumbing Products Liability*

*Litigation*, 2009 WL 1606653, *2 (D. Minn. 2009) (holding that defendants had not made a

compelling showing of undue burden for purposes of Rule 26(b)(2)(B) by relying on the

affidavit of an attorney who was not an expert on document search and retrieval); *O'Bar v.*

*Lowe's Home Centers, Inc.*, 2007 WL 1299180, *5 n. 6 (W.D.N.C. 2007) (noting that an

objection based on Rule 26(b)(2)(B) should be stated with particularity "and not in conclusory or

boilerplate language;" "the party asserting that [electronically stored information] is not

reasonably accessible should be prepared to specify facts that support its contention").  In this

case, Defendants have failed to satisfy their burden under Rule 26(b)(2)(B).

Defendants' claim of undue burden and cost relies solely on the Declaration of James H. Zeldin, Ocwen Financial Corporation's Senior Vice President - Sales and Marketing.  Mr. Zeldin states that he was charged with coordinating Defendants' efforts to obtain information and documents responsive to Cartel's Second Requests and that he "helped evaluate the cost and burden associated with responding" to the subject requests.  Mr. Zeldin's Declaration is more notable for the information it does not provide.  I have not been provided any specific information indicating how the Ocwen Defendants store electronic information, the number of back-up or archival systems that would have to be searched in the course of responding to Plaintiff's Second Requests, or Defendants' capability to retrieve information stored in those back-up or archival systems.  Mr. Zeldin simply proclaims that the process of producing responsive information "would affect our profitability and ability to serve our clients."  The latter statement is the e-discovery equivalent of an unsubstantiated claim that the "sky is falling." The Zeldin Declaration provides no persuasive basis upon which to grant the Ocwen Defendants' Motion for Protective Order.[10]

A few examples from the Zedlin Declaration illustrate the point.  Referring to Interrogatories Nos. 1 and 2, Mr. Zeldin claims that "retrieval of the information sought . . . for the time period 1999 through the present would require the full-time effort of three employees over a period of no fewer than twenty-one days."  Although the Ocwen Defendants take the position that Cartel's discovery should be limited to the period from June 30, 2004 to present, the

---

[10]I note that during a hearing on July 6, 2009, this court told defense counsel that his clients could file a motion for protective order in response to Plaintiff's Second Requests, but "must describe to what extent, if any, there is undue burden and provide a factual basis for the claim of undue burden."  *See* Transcript of Hearing (doc. # 516) at 58.  Therefore, Defendants cannot be surprised by the factual shortcomings cited in this Order.

Zedlin Declaration alludes, without explanation, to the burdens of collecting data going back to 1999. The court is left to guess as to the relative burdens and expense of retrieving data for the much shorter period from June 30, 2004 to the present.

Referring to Request for Production No. 1, Mr. Zeldin states that he is "currently unaware as to where budgets or projections for the start up of our BPO business can be located, or whether they still exist." As an aside, I find this admission troubling, given Mr. Zeldin's role as the purported coordinator of Defendants' efforts to obtain responsive information and documents, and the fact that he and defense counsel had at least 33 days to investigate the existence and accessibility of responsive materials. *See Qualcomm Inc v. Broadcom Corp.*, 2008 WL 66932, *9 (S.D. Cal. 2008) (observing that "[f]or the current 'good faith' discovery system to function in the electronic age, attorneys and clients must work together to ensure that both understand how and where electronic documents, records and email are maintained and to determine how best to locate, review and produce responsive documents"), *vacated in part on other grounds by Qualcomm Inc v. Broadcom Corp.*, 2008 WL 638108 (S.D. Cal. 2008). Notwithstanding his professed lack of knowledge, Mr. Zeldin then speculated that Defendants "would require at least ninety days - and possibly longer - to complete their search for documents responsive to Request for Production 1, assuming any such documents can even be located." The benefits of Rule 26(b)(2)(B) cannot be invoked on mere speculation or unsubstantiated assumptions. *Compare Peskoff v. Faber*, 244 F.R.D. 54, 56 (D.D.C. 2007) (requiring supplemental affidavits where defendant's previously proffered affidavit failed to identify who conducted the required search of electronically stored information, to explain how that search was conducted, to identify which electronic depositories were searched or to explain

how the search was designed to produce the requested materials).

In addressing Plaintiff's fifth Request for Production, Mr. Zeldin opines that the "number of responsive documents could potentially reach the thousands." However, the court can attach little, if any, weight to that statement, as Mr. Zeldin then candidly writes that "responsive documents . . . likely only exist on back-up tapes. Defendants do not know where such documents could be located." Again, the Zeldin Declaration does not provide the court with any information as to the types of databases, storage systems and backup or archival systems that the Ocwen Defendants utilize for electronically stored information (ESI); their policies regarding records management, including the retention or destruction of ESI; or their ESI erasure, modification or recovery mechanisms. *Cf. Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 261 n. 10 (D. Md. 1008) (observing that trial judges are entitled to reliable factual information in deciding whether ESI is not reasonably accessible because of undue burden or cost).

Defendants' Motion for Protective Order must be denied to the extent Defendants seek to preclude discovery relating to non-privileged information and materials for the period on or after June 30, 2004 on the basis of Rule 26(b)(2)(B).

5.      Fees and Costs

In their Motion for Protective Order, Defendants request an award of reasonable expenses pursuant to Fed. R. Civ. P. 26(c)(3) and 37(a)(5)(A). Cartel's Response in Opposition similarly seeks "reasonable attorneys' fees and costs against the Ocwen Defendants . . . for the necessity of opposing the Ocwen Defendants' Motion for Protective Order."

Rule 26(c)(3) incorporates by reference Rule 37(a)(5) which provides that a prevailing

party should recover the reasonable expenses incurred in making or defending against a discovery motion, unless the non-prevailing party's position was substantially justified or other circumstances make an award of expenses unjust.  A position is "substantially justified" in the context of Rule 37 "if it is 'justified to a degree that could satisfy a reasonable person' or where 'reasonable people could differ as to the appropriateness' of the objection or response." *Gipson v. Southwestern Bell Telephone Co.*, 2009 WL 790203, *19 (D. Kan.), *overruled in part on other grounds*, 2009 WL 4157948 (D. Kan. 2009).  A trial court has considerable discretion to determine an appropriate sanction under Rule 37 and the particular circumstances of a given case.  *See, e.g., Baker v. General Motors Corp.*, 86 F.3d 811, 816 (8th Cir. 1996), *rev'd on other grounds*, 522 U.S. 222 (1998).

> If the motion [for protective order] is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(a) and may after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

*See* Fed. R. Civ. P. 37(a)(5)(C).  Not surprisingly, partial success on a discovery motion frequently results in an order directing each side to bear their own fees and costs.  *See, e.g., Impact, LLC v. United Rentals*, 2009 WL 413713, *14 (E.D. Ark. 2009); *Griffith v. Hughes*, 2009 WL 2355769, * 2 (E.D. La. 2009); *Dean v. New Werner Holding Co., Inc.*, 2008 WL 2560707, *10 (D. Kan. 2008).  This default disposition, however, may do little to insure future compliance with the letter and spirit of Rules 26 through 36.

In that vein, Defendants' Motion for Protective Order has prompted this court to consider the interplay between Rule 26(b)(2)(B), Rule 26(c)(1), and Rule 26(g).  My own research has not found any case law that addresses whether the Rule 26(g) certification requirement applies to a motion for protective order under Rule 26(a).  *Compare Starlight International Inc. v. Herlihy*,

186 F.R.D. 626, 647 (D. Kan. 1999) (holding that Rule 26(g) "applies only to written discovery requests, responses or objections") with *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1372 (11th Cir. 1997) (stating that Rule 26(g) applies to "discovery-related filings") and *In re NASDAQ Market-Makers Antitrust Litigation*, 164 F.R.D. 346, 357 (S.D.N.Y. 1996) (in the context of a stipulated order regarding confidential documents, suggested that the designation of a document as confidential would be viewed as the equivalent of a motion for protective order and, thus, subject to sanctions under Rule 26(g)).[11]

By signing discovery requests, responses or objections, an attorney is certifying, to the best of their knowledge, information and belief formed after a reasonable inquiry, that the discovery request, response or objection is

> (i) consistent with [the Federal Rules of Civil Procedure] and warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law, or for establishing new law;
>
> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
>
> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

*See* Fed. R. Civ. P. 26(g)(1)(B).

Rule 26(g) "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." *See* Advisory Committee Notes to 1980 Amendments to Rule 26(g). The Rule 26(g) certification requirement is intended to deter both excessive discovery and evasion on the part of the responding party. *Id.*

---

[11]*See also* Advisory Committee Notes to the 1993 Amendments to Fed. R. Civ. P. 11(d) ("Rules 26(g) and 37 establish certification standards and sanctions that apply to discovery . . . responses, objections *and motions*") (emphasis added).

> Rule 26(g) charges those responsible for the success or failure of pretrial discovery - the trial judge and the lawyers for the adverse parties - with approaching the process properly:  discovery must be initiated and responded to responsibly, in accordance with the letter and spirit of the discovery rules, to achieve a proper purpose (i.e., not to harass, unnecessarily delay, or impose needless expense), and be proportional to what is at issue in the litigation, and if it is not, the judge is expected to impose appropriate sanctions to punish and deter.

*Mancia v. Mayflower Textile Services, Co.*, 253 F.R.D. at 360.

It seems wholly appropriate to apply these same standards to the instant Motion for Protective Order under Rules 26(b)(2)(B) and 26(c).  It is difficult to characterize the Ocwen Defendants' Motion for Protective Order as something other than an "objection" and "response" to discovery.  The motion was triggered by Cartel's Second Requests and served in accordance with the 30-day deadline established in Rules 33(b)(2) and 34(b)(2).  Discovery conduct that is inconsistent with the Federal Rules of Civil Procedure and existing law, or interposed to cause unnecessary delay or needlessly increase the cost of litigation, should not be immune from sanctions simply because it pursued under Rule 26(c).  Defendants' pending motion proves the point.

As the court previously noted, Rules 33 and 34 require a responding party to answer or permit inspection to the extent an interrogatory or request for production is not objectionable. *See* Fed. R. Civ. P. 33(b)(3) and 34(b)(2)(C).  *See also, e.g., Greystone Construction, Inc. v. National Fire & Marine Insurance, Co.*, 2008 WL 795815, *6 (D. Colo. 2008).  In their motion, the Ocwen Defendants concede their obligation to provide responsive information and documents for the period after June 30, 2004.  Yet, on July 13, 2009, Defendants provided no substantive responses to Plaintiff's Second Requests, electing instead to file their Motion for

Protective Order.  Defendants still had not produced responsive and readily available materials or information as of the August 21st hearing on their motion.  *See* Transcript of Hearing (doc. # 540), at 33-34.  Rather than seeking more reasonable relief through a motion for extension of time, Defendants' chosen strategy virtually guaranteed delay.  During the hearing on August 21, 2009, defense counsel insisted that his clients were "only moving for a protective order as it relates to the period prior to 2004."  *See* Transcript of Hearing (doc. # 450), at 15 and 17-18.  Although counsel disclaimed any intention to withhold relevant discovery, "assuming the requests are properly limited" to the period 2004 to the present, Defendants' motion had the practical effect of withholding admittedly discoverable information based upon a factual showing that was patently deficient under any reasonable application of Rule 26(b)(2)(B).  *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990) (counsel, as officers of the court, have an obligation to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests).  The court cannot reconcile this strategy with counsel's obligation under Rule 26(g) to "pause and consider the reasonableness of his . . . response or objection" or the "'affirmative duty' on counsel to behave . . . in a way that is consistent with 'the spirit and purposes of the discovery rules.'"  *Mancia v. Mayflower Textile Services, Co.*, 253 F.R.D. at 357.

Defendants moved for a protective order on July 13, 2009, the day their responses to Plaintiff's Second Requests should have been served.[12]  Notwithstanding Defendants'

---

[12]Under the District Court's Local Rules, Defendants' Motion for Protective Order triggered a 35-day briefing schedule.  *See* D.C.COLO.LCivR 7.1C (for non-dispositive motions, "[t]he responding party shall have 20 days after the filing date of the motion, or such lesser or greater time as the court may allow, in which to file a response.  The moving party may file a reply within 15 days after the filing date of the response, or such lesser or greater time as the court may allow.").

protestation of undue burden and cost, Mr. Zeldin acknowledged that for some of the disputed

discovery requests, responsive documents could be produced within a matter of days.  Defense

counsel concede as much during the August 21st hearing when he advised this court that for most

Cartel's discovery requests, response information for period from 2004 to present was accessible

for purposes of Rule 26(b)(2)(B).  *See* Transcript of Hearing (doc. # 540), at 18.  *See also In re*

*Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 337 (N.D. Ill. 2005) (a party objecting to

discovery is not required to seek a protective order; the responding party has the option of

providing appropriate written objections and leaving it the requesting party to file a motion to

compel).  This concession not only belies Defendants' claim of undue burden and expense, but

also flies in the face of Ocwens' obligation to respond to the unobjectionable portions of

Plaintiff's discovery requests.  *Cf. Burton Mechanical Contractors, Inc. v. Foreman*, 148 F.R.D.

230, 233 (N.D. Ind. 1992) (suggesting some skepticism as to defendant's claim of undue burden

in light of defendant's subsequent interrogatory responses).

Rule 26(b)(2)(B) establishes a two-tier approach to the discovery of electronically stored

information.  *See, e.g., Aguilar v. Immigration and Customs Enforcement Division*, 255 F.R.D.

350, 360 (S.D.N.Y. 2008).  "A responding party should produce electronically stored

information that is relevant, not privileged and reasonably accessible, subject to the [Rule

26](b)(2)(C) limitations that apply to all discovery."  *See* Advisory Committee Notes to the 2006

Amendments to Rule 26(b)(2).  Defendants all but concede that was not done in this case.  While

Rule 26(b)(2)(B) provides a useful mechanism to address the unique challenges of electronic

discovery, it should not be exploited as a vehicle for gamesmanship.  More importantly, this

Rule should not be invoked as a means to forestall the production of materials that are admittedly

relevant and readily accessible.  Like all the Federal Rules of Civil Procedure, Rule 26(b)(2)(B) must "be construed and administered to secure the just, speed, and inexpensive determination of every action."  *See* Fed. R. Civ. P. 1.

The pending Motion for Protective Order is not consistent with the applicable Federal Rules of Civil Procedure or the weight of existing case law.  *See* Fed. R. Civ. P. 26(g)(1)(B)(i). By any objective standard, the pending motion resulted in unnecessary delay and needlessly increased the cost of this litigation.  *See* Fed. R. Civ. P. 26(g)(1)(B)(ii).  *See also Lillie v. United States,* 40 F.3d 1105, 1110 (10th Cir. 1994) ("Rule 26(g) questions are governed by the same objective standards applied under Rule 11"); *In re Byrd, Inc.*, 927 F.2d 1135, 1137 (10th Cir. 1991) (when considering sanctions under Rule 26(g), the court must judge the attorney's conduct under an objective standard of reasonableness; subjective bad faith is not required to trigger the imposition of sanctions).

Accordingly, for the foregoing reasons, I will grant in part and deny in part Defendants' Motion for Protective Order Regarding Plaintiff's Second Set of Interrogatories and Requests for Production of Documents Prior to Retrial.  Defendants' motion is granted and the Ocwen Defendants will not be required to respond to the extent that Plaintiff's Second Requests seek information and/or materials for the period prior to June 30, 2004, or seek information or materials that do not exist or previously have been produced in discovery.

The court will deny that portion of Defendants' motion that attempts to invoke the protections of Rule 26(b)(2)(B).  The implications of the latter ruling, however, are not completely clear.  In their Advice of Submission of Discovery Responses (doc. # 554), filed on September 18, 2009, Defendants take the position that their supplemental response to Plaintiff's

Second Requests "contains the information and documents responsive to those portions of Cartel's [Second Requests] to which Defendants do not object."  Cartel challenged the latter assertion by specifically citing the Ocwen Defendants' production of information "respecting only the approximately 1,417 BPO providers whose names Ocwen acknowledges were misappropriated from [Cartel's] database."  *See* Plaintiff's Response to Defendants' Advice of Submission of Discovery Responses, at ¶12 (emphasis in original).  Plaintiff contends that "[w]ithout information respecting all of Ocwen's BPO providers (not just those it acknowledges were misappropriated), if it (sic) impossible to determine the extent to which the Ocwen Defendants misappropriated information from [Cartel's] database, and impossible to determine the extent to which the Ocwen Defendants realized gains as a result of their misappropriation."  *Id.* (emphasis in original).  At this juncture, the court is not prepared to weigh in on this particular dispute.  The court will require Defendants to supplement their discovery responses in a manner consistent with that portion of this Order denying their Motion for Protective Order.  That supplemental information, to the extent not already furnished to Plaintiff, must be served on opposing counsel within two weeks of the entry of this Order.  Upon service of that supplemental information, Plaintiff may pursue file any appropriate discovery motions that are consistent with the Federal Rules of Civil Procedure, applicable case law, and prior rulings in this case, and compliant with the Local Rules of the United States District Court and my practice standards.

Finally, the court will require the Ocwen Defendants to show cause why, pursuant to Rule 26(g)(3), it should not be required to pay the reasonable expenses, including attorneys fees, incurred by Plaintiff Cartel as a result of the instant Motion for Protective Order.  *See Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd Partnership*, 76 F.3d 1003, 1007 (9th Cir.

1996) (noting that Rule 26(g) requires fair notice and an opportunity to respond on the record).

The Ocwen Defendants must submit that response within ten days of entry of this Order.

B.      *Plaintiff's Motion to Compel and For Contempt Remedy*

Cartel has moved for an order, pursuant to Fed. R. Civ. P. 37(a) requiring "the Ocwen

Defendants to respond comprehensively to [Plaintiff's] written discovery that this Court has

already directed (in its Order dated June 17, 2009) be answered comprehensively and without

objection."  *See* Plaintiff's Motion to Compel and for Contempt Remedy (doc. # 529), at 1.

While Plaintiff maintains that "Defendants' discovery shenanigans have successfully thwarted

nearly all of [Cartel's] diligent efforts to secure comprehensive and meaningful responses to the

most fundamental of questions relating to the Ocwen Defendants' ill-gotten gains," *see*

Plaintiff's Motion to Compel, at 4, Cartel's motion specifically challenges the sufficiency of

Defendants' responses to Interrogatory No. 1(a) and (d) of Cartel's First Requests.[13]  *See*

*Williams v. Adams*, 2009 WL 1220311, *1 (E.D. Cal. 2009) (noting that the moving party must

inform the court which discovery requests are the subject of the motion to compel).  In addition

to an order requiring Defendants to provide proper discovery responses, Cartel asks the court to

hold the Ocwen Defendants in contempt.  I note that while the instant motion references Rule

37(a) and 37(b), counsel has not cited any case law supporting Cartel's position and requested

relief.  *See* D.C.COLO.LCivR. 7.1C ("Excluding motions filed under Fed. R. Civ. P. 56 or 65, a

motion involving a contested issue of law shall state under which rule or statute it is filed and be

supported by a recitation of legal authority incorporated into the motion.").

---

[13] *See also* D.C.COLO.LCivR 37.1 (a motion to compel under Rule 37 "shall set forth
verbatim the interrogatory, request, and response to which the motion is directed").

Again to assist the reader, the court will briefly summarize the chronology of events pertinent to the instant motion.  Plaintiff Cartel served its First Requests on March 2, 2009, which made the Ocwen Defendants' responses due on April 1, 2009.  On that day, Defendants filed a motion for extension of time, requesting leave to serve their responses on April 15, 2009.  Cartel did not oppose that motion for extension of time.  On April 15, 2009, the Ocwen Defendants served their responses to Plaintiff's First Requests.  Defense counsel, however, withdrew those responses the very next day, stating in an e-mail that

> I have been advised that the discovery responses I provided to you yesterday contain incorrect information.  I will provide you with revised responses as soon as practicable.[14]

See Exhibit C attached to Plaintiff's Motion to Compel Immediate and Complete Responses (doc. # 501).  On April 20, 2009, Cartel filed its Motion to Compel Immediate and Complete Responses to Plaintiff's Interrogatories and Requests for Production of Documents Prior to Retrial (doc. # 501).  The Ocwen Defendants served revised discovery responses on May 8, 2009, while contemporaneously filing a Response to Plaintiff's Motion to Compel (doc. # 505).  On May 19, 2009, Cartel's attorney sent a letter to opposing counsel detailing his perceived deficiencies in Ocwen's supplemental responses of May 8, 2009.  Plaintiff's counsel complained, in pertinent part, that Defendants' response to Interrogatory No. 1(a) did not indicate whether all those individual real estate professionals included in the database "are eligible to produce and

---

[14]In response to the court's questioning during the June 17th hearing, defense counsel conceded that the only discovery responses that changed substantially after April 16, 2009 were the responses to Interrogatory Nos. 1(b) and 1(d).  See Transcript of Hearing (doc. # 514), at 12-13.  If that truly is the case, counsel should not have withdrawn the April 15th responses in their entirety.  Counsel's lack of candor, both in identifying the scope of any inaccuracies and providing a date certain for supplementation, almost certainly contributed to an already rancorous atmosphere.  This was yet another missed opportunity for cooperation and professional interaction.

sell BPOs to the Bank (one suspects that the database may contain and identify individual real estate professionals who the Bank will not use for one reason or another)." *See* Exhibit B attached to Plaintiff's Motion to File Under Seal Exhibits to Plaintiff's Reply in Support of Motion to Compel (doc. # 506). In the same letter, Plaintiff's counsel advised that "if we do not hear from you as to Defendant's position within the next two days . . . we will file appropriate papers with the federal district court." *Id.* Defendants' counsel responded on June 2, 2009, insisting that the May 8, 2009 revised discovery responses were complete save for Interrogatory No. 1(d), for which Defendants anticipated providing additional information. *See* Transcript of Hearing (doc. # 514), at 15.

This court addressed Plaintiff's earlier motion to compel during a hearing on June 17, 2009. At that hearing, Cartel's counsel broadly challenged the sufficiency of Defendants' revised discovery responses, but specifically referenced the responses to Interrogatory Nos. 1(a), 1(b), 1(d), 2 and 3. *See* Transcript of Hearing (doc. # 514), at 20-23. Echoing Defendants' general objections, defense counsel suggested that his clients' answers were the best they could provide given that Plaintiff's interrogatories were "so vague and broadly worded." *Id.* at 24. I rejected the latter argument, after noting that Defendants' invocation of boilerplate objections was wholly ineffective. *See*, *e.g., Johnson v. Kraft Foods North America, Inc.*, 238 F.R.D. 648, 651 (D. Kan. 2006) (held that defendants had waived their "general objections" by failing to make any meaningful effort to show the application of those general objections to specific requests; ordered defendants to serve additional responses "without consideration of their purported 'general objections'").

Based upon prevailing case law, the court concluded that Defendants had waived their

objections.  I granted Plaintiff's motion to compel and required Defendants to provide "supplemental responses that fully comply with . . . the requirements of Rule 26, Rule 33 and Rule 34."  *See* Transcript of Hearing (doc. # 514), at 38.  The court further required the Ocwen Defendants to provide narrative responses, and precluded Defendants from relying on Fed. R. Civ. P. 33(d) unless they could demonstrate that the burden of deriving the requested information would be no greater for Cartel.  *Id.* at 39.  On June 26, 2009, Defendants served their "Second Set of Supplemental Responses" to Plaintiff's First Requests.  Plaintiff challenged the sufficiency of those supplemental responses by filing the pending Motion to Compel and for Contempt Remedy on July 22, 2009.

The Ocwen Defendants filed an Advice of Submission of Discovery Responses (doc. # 544), on September 18, 2009, indicating that a Third Set of Supplemental Responses to Plaintiff's First Requests had been served on September 9, 2009.  In this Advice of Submission, Defendants expressed their belief that their most recent supplemental responses fully discharged Defendants' "obligation to respond to the First Requests and, therefore, the Motion to Compel should be denied."  Cartel filed a Response to Defendants' Advice of Submission of Discovery Responses (doc. # 551) on October 12, 2009, stating that "the Ocwen Defendants have still refused to produce a meaningful response to [Cartel's] Interrogatory No. 1(a)" of Plaintiff's First Requests.  The Ocwen Defendants filed under seal a Reply (doc. # 554) on October 27, 2009.

Defendants initially argue that Plaintiff's motion should be denied for failure to comply with the "meet and confer" requirements of Rule 37(a)(1) and Local Rule 7.1A.  The version of Local Rule 7.1A that was in effect on July 22, 2009 specifically stated that a non-dispositive motion would not be considered unless "counsel for the moving party . . . before filing the

motion, has conferred or made reasonable, good-faith efforts to confer with opposing counsel . . . to resolve the disputed matter."  *See* D.C.COLO.LCivR 7.1A.  That same Rule required the moving party to "state in the motion, or in a certificate attached to the motion, the specific efforts to comply with this rule."  Plaintiff's Motion to Compel and For Contempt Remedy does not include the certification required by Local Rule 7.1A and makes no reference to specific efforts undertaken to comply with that Rule.

Earlier in this Order, I emphasized the importance of complying with applicable "meet and confer" requirements.  Suffice to say, Plaintiff Cartel failed to comply with those requirements before filing the instant motion.  As a result, the court once again finds itself immersed in a discovery dispute that might have been avoided if counsel had reasonably and diligently discharged their professional obligations to each other and the District Court.  While the instant Motion to Compel and For Contempt Remedy could be denied based upon Plaintiff's failure to satisfy the requirements of Rule 37(a)(1) and Local Rule 7.1A, the court will address the merits of the parties' substantive arguments, if only to end this round of discovery disputes. *Cf. Leonard v. Nintendo of America, Inc.*, 2008 WL 2725629, *1 (W.D. Wash. 2008) (while criticizing counsels' failure to observe the professional courtesy underlying the meet and confer requirement, the court noted its "discretion . . . to address such gamesmanship" by litigants or their counsel).  The court will consider the implications of Plaintiff's non-compliance with Rule 37(a)(1) and Local Rule 7.1A in the context of Cartel's request for sanctions.

Tracing the evolution of Plaintiff's objections to Ocwen's responses to the First Requests, it now appears that Cartel's challenge focuses exclusively on Interrogatory No. 1(a). *See* Plaintiff's Response to Defendants' Advice of Submission of Discovery Responses (doc. #

551), at ¶¶ 10-11.  Interrogatory No. 1(a) states as follows:

>    a.      Provide such information as is available (on a monthly or other
> periodic basis if available) as to the success achieved by the Bank in building or
> increasing any such [database of individual real estate professionals who prepare
> and provide BPOs for the Bank] during this period.

Defendants provided a supplemental response to this interrogatory on June 26, 2009.  This

supplemental response, which was filed under seal with the court (*see* doc. # 524 ), explained

how the Ocwen Defendants have evaluated their success in building or increasing the database of

individual real estate professionals from 2004 to the present, and indicated by year the number of

individual real estate professionals who had expressed an interest in preparing and providing

BPOs to Ocwen Realty Advisors.  In the same response, the Ocwen Defendants directed Plaintiff

to seven specifically identified documents that also were responsive to Interrogatory No. 1(a).

Cartel contends this response is inadequate because it does not identify which or how

many of the listed BPO providers are deemed by the Ocwen Defendants to be ineligible to sell

BPOs.  Plaintiff argues that without this information, it is impossible to determine whether the

number of eligible BPO providers in the Ocwen database has increased or decreased over the

years and, therefore, impossible to determine "the success achieved" by the Ocwen Defendants

in constructing their database.  *See* Plaintiff's Response to Defendants' Advice of Submission of

Discovery Responses, at ¶10.  According to Cartel,

>    Rather than provide this simple but critical information, the Ocwen Defendants
> state that they view "success" in terms of the number of real estate professionals
> who have at one time expressed an interest in selling BPOs to Ocwen.  These
> individuals are presumably included in Ocwen's BPO provider database, but it is
> patently absurd to respond that the inclusion of these individuals in the database is
> a "success" if, in fact such individuals are ineligible to provide BPOs.

*Id.* at ¶11.  Plaintiff contends that Ocwen could resolve this perceived problem by simply

providing the "prevent code" for any of the BPO providers in its database.

Defendants take the position that they have fully and properly responded to Interrogatory No. 1(a) by providing an answer that reflects Ocwen's methodology for measuring "the success achieved by the Bank in building or increasing" its database of BPO providers. As for the identity of ineligible providers, the Ocwen Defendants maintain that Interrogatory No. 1(a) does not specifically request information or data relating to ineligible providers.

In responding to written discovery, a party and their counsel are required to give those requests a reasonable construction. *Adolph Coors Co. v. American Insurance Co.*, 164 F.R.D. 507, 518 (D. Colo. 1993). Cf. *King-Hardy v. Bloomfield Board of Education*, 2002 WL 32506294 at * 5 (holding that discovery requests must be given a reasonable construction, rather than straining to find ambiguity where there is none). However, as the court correctly noted in *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 323-24 (N.D. Ill. 2005) (citations omitted),

> In reviewing a claim that an answer to an interrogatory is not responsive or is incomplete, the initial focus is on the question, not the answer, for on the question you ask depends the answer you get. "Putting the wrong question is not likely to beget right answers even in law." . . . Consequently, the defendants were only obligated to answer the questions that were asked, and were not required to guess that information beyond that which was specified was being sought.

*Cf. Ronat v. Martha Stewart Living Omnimedia, Inc.*, 2007 WL 809626, *5 (S.D. Ill. 2007) (while plaintiff characterized defendant's interrogatory response as incomplete and evasive, the court denied in part the motion to compel finding that defendant "cannot be faulted for plaintiff's poorly drafted interrogatory").[15] In summary, a responding party is entitled to answer a poorly

---

[15]The parties cannot accuse the court of unequal treatment. During a hearing on July 7, 2009, the Ocwen Defendants objected to Cartel's responses to their written discovery as "non-responsive or hypertechnical." Defendants complained they could not get "a straight answer

phrased interrogatory as it was drafted.  Measured by that standard, I find that Defendants'

response to Interrogatory No. 1(a), as supplemented, complies with Rules 26 and 33.  *Cf.*

*Gardias v. San Jose State University*, 2007 WL 2288325, *3 (N.D. Cal. 2007) (denying a motion

to compel the production of information that was not requested in the first instance).  Plaintiff's

Motion to Compel is, therefore, denied.

The court is left to decide the question of sanctions.  Cartel's motion requests an Order

holding the Ocwen Defendants in contempt of my June 17, 2009 Order requiring supplemental

discovery responses and "directing that the Ocwen Defendants may not contest at trial [Cartel's]

proof of the Ocwen Defendants' ill-gotten gains derived from their theft of [Cartel's] valuable

trade secret."  A magistrate judge's authority in the context of civil contempt is set forth in 28

U.S.C. § 636(e)(6), which provides that

> the magistrate judge shall . . . certify the facts to a district judge and may serve or
> cause to be served, upon any person whose behavior is brought into question
> under this paragraph, an order requiring such person to appear before a district
> judge . . . to show cause why that person should not be adjudged in contempt by
> reason of the facts so certified.

However, where the magistrate concludes that the factual record does not warrant a contempt

citation, "[he] may choose not to certify the matter for further proceedings."  *See In re*

*Kitterman*, 696 F. Supp. 1366, 1370 (D. Nev. 1988).  In view of my decision to deny Plaintiff's

Motion to Compel, I find no legal or factual basis to certify this matter to the district judge for

further contempt proceedings.

Plaintiff also sought an award of fees and costs incurred in connection with pursuing the

---

from Cartel."  *See* Transcript of Hearing (doc. # 516), at 5.   Notwithstanding defense counsel's
complaints, the court concluded Defendants were complaining about the inevitable fruits of
badly phrased discovery requests.  *Id.* at 21 and 32.

instant Motion to Compel and for Contempt Remedy.  That request must be denied.  Rule 37(a)(5)(A) provides that if a motion to compel is granted or "if the . . . requested discovery is provided after the motion is filed," the court must award the moving party's reasonable expenses incurred in making the motion, unless the court finds that the moving party failed to comply with the "meet and confer" requirement, the non-moving party's response was substantially justified, or "other circumstances make an award of expenses unjust."  While the court is not condoning the Ocwen Defendants' course of conduct in responding to Plaintiff's First Requests, I also cannot ignore Plaintiff's repeated failure to comply with its "meet and confer" requirements.

During the June 17, 2009 hearing on Cartel's original motion to compel, I reminded counsel that the court has "a long-standing requirement in cases in my court that before you file a motion to compel you put together a telephone conference call and you discuss the matter with me."  *See* Transcript of Hearing (doc. # 514), at 32.  While the court granted Plaintiff's earlier motion to compel, I declined to award fees and costs based upon counsel's non-compliance with Rule 37(a)(1), Local Rule 7.1A and the court's practice standards.[16]  Yet no more than five weeks later, counsel filed the instant Motion to Compel, again without any attempt to comply with "meet and confer" requirements.  *See Wilbert v. Promotional Resources, Inc.*, 1999 WL 760524, *2 (D. Kan. 1999) (holding that counsel's understandable frustration with opposing counsel "does not negate the duty to comply with conference requirements').  The court cannot

---

[16]In particular, Mr. Merrick's May 19, 2009 letter threatening a motion to compel unless Defendants provided supplemental responses within two days, could not satisfy Rule 37(a)(1).  *See, e.g.*, *Williams v. Board of County Commissioners*, 192 F.R.D. at 700 ("a single letter between counsel which addresses the discovery dispute . . . does not satisfy the duty to confer"); *Cotracom Commodity Trading Co. v. Seaboard Corporation*, 189 F.R.D. 456, 459-60 (D. Kan. 1999) (held that the moving party's unilaterally imposed deadline for producing requested documents or facing a motion to compel was premature).

overlook this omission.  *Cf. Gouin v. Gouin*, 230 F.R.D. 246, 247 (D. Mass. 2005) (denied the

prevailing party's request for fees where nothing in the record indicated that plaintiff's counsel

had made any effort to resolve discovery disputes before seeking judicial intervention); *Time,*

*Inc. v. Simpson*, 2002 WL 31844914, *2 (S.D.N.Y. 2002) (held that plaintiff's failure to initiate

discussions in an effort to narrow the issues and reduce the costs of litigation precluded an award

of costs, including attorneys' fees, under Rule 37(a)).  The court must deny Plaintiff's request for

fees and costs based on the clear prohibition in Rule 37(a)(5)(A)(i).

Although Plaintiff's Motion to Compel and for Contempt Remedy is being denied, I will

not award the Ocwen Defendants its reasonable expenses incurred in opposing the motion.  Rule

37(a)(5)(B) states the court must not award the prevailing party its reasonable expenses if the

court finds that "other circumstances make an award of expenses unjust."  Under the

circumstances of this case, I conclude that an award of expenses to the Ocwen Defendants would

be unjust.  Neither side has approached discovery with a spirit of cooperation or efficiency.  All

too often, discovery has devolved into a series of complaints and counter-accusations.  It is

fitting that each side should bear their own fees and costs incurred in connection with Plaintiff's

Motion to Compel and for Contempt Remedy.

C.      *Plaintiff's Motion to Strike*

On October 29, 2009, Plaintiff Cartel filed its Motion to Strike Defendants' Reply to

Plaintiff's Response to Defendants' Advice of Submission of Discovery Responses (doc. # 558).

This three-page motion argues that Defendants' Reply was filed without authorization from the

court, but provides no legal authority to support the relief requested.  *But see Ruggiero v.*

*Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (noting that the district court had the

discretion to consider arguments raised for the first time in a reply brief).  *See also Pippin v.*

*Burlington Resources Oil and Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) (finding no error in

the trial court's consideration of defendant's reply brief, particularly where plaintiff "had plenty

of opportunity to seek leave of the court to file a surreply but never attempted to do so").

Accordingly, the court will deny Plaintiff's Motion to Strike based upon Cartel's failure to

identify the particular rule or statute under which the motion was filed and provide a recitation of

legal authority in its motion.  *See* D.C.COLO.LCivR 7.1C.[17]

D.      *Defendants' Motion to File Under Seal*

        The Ocwen Defendants filed their Motion to File Under Seal Reply to Plaintiff's

Response to Defendants' Advice of Submission of Discovery Responses (doc. # 552) on October

27, 2009.  Defendants insist their Reply contains proprietary information, the disclosure of which

would have a deleterious effect on Ocwen Realty Advisors if disclosed to competitors.  In his

Rule 7.1A certification, defense counsel states that Cartel opposes the requested sealing.  The

court will grant the Motion to File under Seal after concluding that Defendants have

demonstrated compelling reasons for sealing.  Moreover, I note that since Plaintiff filed its

Motion to Compel (doc. # 501) on April 20, 2009, the court has granted several motions to seal

filed by Plaintiff or Defendants, including Defendants' Unopposed Motion to File Under Seal

Exhibits to Advice of Submission of Discovery Responses (doc. # 543) filed on September 18,

2009.  As to the latter motion, Plaintiff's counsel apparently declined to oppose the request for

sealing while still expressing his opposition to statements set forth in the Advice regarding

---

        [17]t must be noted that once again, Plaintiff's counsel failed to comply with Local Rule
7.1A in filing the instant Motion to Strike.

Defendants' compliance with their discovery obligations.  Have established a practice of sealing propriety information disclosed in discovery, I find no persuasive reason to depart from that practice in connection with the instant Motion to Seal.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court orders as follows:

(1)     Defendants' Motion for Protective Order Regarding Plaintiff's Second Set of Interrogatories and Requests for Production of Documents Prior to Trial (doc. # 518), is GRANTED IN PART and DENIED IN PART.  The Motion for Protective Order Is GRANTED to the extent that Plaintiff's Second Requests seek information and/or materials for the period prior to June 30, 2004, or seek information that does not exist or has previously been produced in discovery.  The Motion for Protective Order is DENIED to the extent that it purports to invoke the protections of Rule 26(b)(2)(B).  The court hereby ORDERS the Ocwen Defendants to supplement their discovery responses, within two weeks of entry of this Order, in a manner consistent with this Order and the applicable Federal Rules of Civil Procedure.  Under the terms of this Order, the Ocwen Defendants are not required to re-produce information previously provided in supplemental productions.

(2)     The Ocwen Defendants are hereby ORDERED to show cause why, pursuant to Rule 26(g)(3), they should not be required to pay the reasonable expenses, including attorneys fees, incurred by Plaintiff Cartel as a result of the instant Motion for Protective Order.  The Ocwen Defendants must submit that response within ten days of entry of this Order.

(3)     Plaintiff's Motion to Compel and for Contempt Remedy (doc. # 529) is DENIED.

(4)     Defendants' Motion to File Under Seal Reply to Plaintiff's Response to

Defendants' Advice of Submission of Discovery Responses (doc. # 552) is GRANTED.

(5)     Plaintiff's Motion to Strike "Defendants' Reply to Plaintiff's Response to Defendants' Advice of Submission of Discovery Responses" (doc. # 559) is DENIED.

Dated this 8th day of February, 2010.

BY THE COURT:

   s/Craig B. Shaffer
United States Magistrate Judge