**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 01-cv-01644-REB-CBS

CARTEL ASSET MANAGEMENT, a Colorado corporation,

    Plaintiff,

v.

OCWEN FINANCIAL CORPORATION, a Florida corporation;
OCWEN FEDERAL BANK FSB, a subsidiary of OCWEN FINANCIAL CORPORATION, and
OCWEN LOAN SERVICING, LLC, in its capacity as successor-in-interest to OCWEN FEDERAL BANK, FSB,

    Defendants.

## ORDER CONCERNING MOTIONS FOR ATTORNEY FEES

**Blackburn, J.**

This matter is before me on the following: (1) **Plaintiff's Motion for Award of Attorneys' Fees** [#841][1] filed April 19, 2011; and (2) plaintiff's **Motion for Increase in Attorneys' Fee Award for Fees/Costs Incurred Following July 22, 2011** [#879] filed September 9, 2011. The defendants filed responses [#860 & # 880], and the plaintiff filed replies [#867 & #881]. The defendants filed a surreply [#873] addressing the first motion [#841]. I grant the motions in part and deny them in part.

### I. BACKGROUND

This case was first tried in 2004. The plaintiff, Cartel Asset Management (Cartel), asserted a claim for relief under Colorado law for theft of trade secrets. The

---

[1] "[#841]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

defendants are a group of entities associated with Ocwen Financial Corporation. I will refer to the defendants collectively as Ocwen.

Both Cartel and Ocwen appealed the judgment entered after the 2004 trial. The United States Court of Appeals for the Tenth Circuit reversed and remanded the case to this court for a new trial on damages. *Cartel Asset Management v. Ocwen Financial Corp.*, 249 Fed. App'x 63 (10th Cir. 2007). In its opinion, the Tenth Circuit concluded that the "district court must reassess the question of attorneys fees under Colorado law." *Id*. at 85.

After re-trial on the issue of damages, judgement entered in favor of Cartel against Ocwen in the amount of 14,574,183 dollars. This amount includes 6,359,588 dollars in actual damages, 7,359,588 dollars in punitive damages, and 855,007 dollars in prejudgment interest. Cartel now seeks an award of attorney fees under §7-74-105, C.R.S.

## II. STANDARD OF REVIEW

As adopted in Colorado, the Uniform Trade Secrets Act, provides for an award of attorney fees to a prevailing plaintiff who proves a willful and malicious misappropriation of the plaintiff's trade secret:

> If . . . willful and malicious misappropriation exists, the court may award reasonable attorney fees to the prevailing party.

§7-74-105, C.R.S. In this case, the jury concluded that Ocwen acted in a malicious or willful and wanton manner when it misappropriated Cartel's trade secret. *Id*. at 85.

Under Colorado law, the initial estimate of a reasonable attorney fee is reached by calculation of the lodestar amount. *Spensieri v. Farmers Alliance Mutual Insurance Co.*, 804 P.2d 268, 270 (Colo. App. 1990); *Tallitsch v. Child Support*

*Services, Inc.*, 926 P2d 143, 145 (Colo. App. 1996).  The lodestar is equal to the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate.  *Id*.  The lodestar carries a strong presumption of reasonableness.  *Id*.

Once a lodestar amount is determined, that amount may be adjusted up or down after considering other factors not included in the lodestar calculation.  *Spensieri*, 804 P.2d at 271 (*citing Johnson v. Georgia Highway Express, Inc*., 488 F2d 714 (5th Cir. 1974)); *Tallitsch*, 926 P.2d at 147.  These factors may include the degree of success achieved, the amount in controversy, the length of time required to represent the client effectively, the undesirability of the case, the complexity of the case, the value of the legal services to the client, the customary fee for similar work, awards in similar cases, the fee agreement between the client and the attorney, and whether the fee is fixed or contingent.  *Id*.

### III.  REASONABLE ATTORNEY FEES

#### A.  Lodestar Amount

The hourly rates at issue all concern lawyers working in Denver, Colorado, from 2001 to 2012.  From May, 2001, to the latter part of 2002, Cartel was represented by Dorr, Carson, Sloan, & Pirney, P.C.  Jacobs, Chase, Frick, Kleinkopf, and Kelly took over from Dorr, Carson, and represented Cartel until February, 2004.  In February, 2004, Senn, Visciano, Kirschenbaum, P.C., took over from Jacobs Chase.

Glenn W. Merrick, then a lawyer at Senn Visciano, was lead counsel for Cartel beginning in February, 2004.  In February, 2006, Mr. Merrick formed Merrick and Associates.  After making that transition, Mr. Merrick continued to represent Cartel, and his representation continues to the present.  During this time Cartel hired other lawyers for certain specialized tasks it considered to be necessary during the long course of this

3

litigation. A total of 34 timekeepers billed Cartel for legal representation during the pendency of this case.

According to Ocwen, the total amount of attorney fees sought by Cartel should be reduced because (1) some billing records are not adequate; (2) the reasonableness of hourly rates for some timekeepers has not been established; (3) some work billed to Cartel was duplicative or otherwise inefficient; (4) some time was billed for work on Cartel's failed claims against individual defendants, which representation resulted in an award of sanctions against Cartel under FED. R. CIV. P. 11; (5) time billed for secretarial or administrative work is not properly part of an attorney fees award; (6) Cartel was not required to pay some fees billed by the Jacobs Chase firm; and (7) Cartel is not entitled to additional fees sought in its reply [#867] and motion for increase of award [#879]. I address each of these issues in turn.

Ocwen's response [#860] to the motion for attorney fees includes a declaration and report by Gregory E. Goldberg, Esq., concerning Cartel's motion for attorney fees. *Response* [#860], Exhibit A (Goldberg Report). I rely on both Ocwen's response and the Goldberg Report as statements of Ocwen's position.

1. Inadequate billing records. According to Ocwen, billing records for fees billed by Richard Oertli and Sherman and Howard are not sufficiently detailed to support a determination of reasonable attorney fees. I agree. These billing records, Exhibits N and P to Cartel's motion, combine multiple tasks into large blocks of time, fail to identify the amount of time billed, fail to identify the attorney performing the work, and/or bill in half or whole hour increments. Ocwen contends that the total amount billed on these two invoices should be reduced from 70,450 dollars to 16,085 dollars. I agree. This reduces the amount claimed by Cartel by 54,365 dollars.

     2.  Reasonable hourly rates.  Cartel failed to provide with its motion resumes for thirteen of the timekeepers whose time was billed to Cartel.  Absent that information, Ocwen asserts, it cannot determine a reasonable hourly rate for these timekeepers.  However, in its response, Ocwen does not propose a specific reduction of the attorney fees award based on the absence of this information.  *Response* [#860], pp. 11-12, 17-18.  Rather, Ocwen proposes that the fees billed by these and other time keepers not be awarded because their work unreasonably was duplicative of work done by other timekeepers.  *Response* [#860], pp. 12-13.  With its reply [#867], Cartel provides resumes for eight of the thirteen time keepers.

    I find and conclude that no reduction of the lodestar figure is merited based on the initial lack of information about these timekeepers.  With Cartel's reply, the qualifications of most of these time keepers have been established.  These time keepers billed a relatively small number of hours to Cartel.  Most important, the deduction for duplicative work fairly accounts for any flaws in Cartel's demonstration of the qualifications of these timekeepers.

     3.  Duplicative work and other inefficiencies.  According to Ocwen, the attorney fees sought by Cartel include large amounts of work that was unreasonably duplicative of work done by other attorneys.  Repeated turnover of the firms representing Cartel and the use of certain law firms for specialized work caused much of this duplication, Ocwen contends.  In addition, Ocwen asserts that the case was often staffed inefficiently by Cartel's law firms, at least until February, 2004.

    Without question, when Cartel hired a new law firm, the new law firm was required to spend time getting up to speed on the case.  Compared to staying with the same law firm, such time spent by a new law firm is inefficient.  However, sometimes it

5

is reasonably necessary for a client to change law firms. For example, Cartel says it was required to change law firms in February, 2004, because it was unable to pay approximately 221,000 dollars in attorney fees it owed to the Jacobs Chase firm. *Reply* [#867], Exhibit 3, CM/ECF pages 18 - 19. Such a change of law firms is reasonable and, under these circumstances, some duplication of effort at the new law firm is necessary and reasonable. The reasons for the 2002 change from the Dorr Carson firm to the Jacobs Chase firm are not reflected in the record. Therefore, the record does not demonstrate whether the duplication of effort caused by this change of law firms was reasonable or not. Cartel has the burden to demonstrate that the fees sought are reasonable. Any doubt about the reasonableness of this duplication of effort must be resolved against Cartel.

Considering the nature of this case and the circumstances faced by Cartel and its attorneys over the eleven years in which this case has been litigated, I find and conclude that the record reflects some duplication of effort by Cartel's attorneys. Addressing the issue of attorney fees after the first trial, Judge Figa found that the turnover of law firms representing Cartel caused some unreasonable duplication of efforts and billing. *Order* [#379], p. 14.[2] That finding carries some weight in my analysis. However, not all of the duplication of effort was unreasonable. For example, the switch from the Jacobs Chase firm to the Senn Visciano firm was reasonably necessary.

Ocwen argues that a one-third reduction in the overall hourly fees billed to Cartel is a reasonable estimate of the amount billed to Cartel that reflects efforts that were

---

[2] Judge Figa's award of attorney fees later was vacated. ***Cartel Asset Management v. Ocwen Financial Corp.***, 249 Fed. App'x 63, 85 (10th Cir. 2007).

6

duplicated unreasonably or otherwise were inefficient. *Goldberg Report*, p. 13. As noted in the Goldberg Report, this one-third reduction roughly approximates all of the attorney fees billed to Cartel by law firms other than the Senn Visciano firm, which began to represent Cartel in February, 2004, and the Merrick firm. *Id.* I disagree. The record does not support the conclusion that all of the work done by Cartel's other law firms was unreasonably duplicative of other work or was otherwise inefficient.

Ocwen asserts also that some of the work done by speciality law firms hired by Cartel was unreasonably duplicative of work done for Cartel by other lawyers. Ocwen challenges the fees billed by Lewis Meyers & Scheid, LLC, and Sherman and Howard. Lewis Meyers was hired after the first trial to assist the Senn Visciano firm with legal research and to draft the appellate briefs. Cartel says the Lewis Meyers firm provided key research about trade secret and other intellectual property issues. Mr. Goldberg describes, fairly, entries in the Lewis Meyers billing that are duplicative of efforts by other lawyers in the case. I conclude that a 50 percent reduction of the amount billed by Lewis Meyers is a fair approximation of the unreasonable duplication reflected in the record. That amounts to a reduction of 5,915 dollars.

Sherman and Howard was hired for a four month period in 2005 to determine whether the proposed dissolution of Ocwen Federal Bank would impair Cartel's ability to collect a judgment. Given the circumstances, I conclude that this advice was reasonably necessary and was not duplicative of other efforts.[3]

When an application for attorney fees is voluminous, a court need not evaluate and rule on the adequacy or propriety of every entry in the application. ***American***

---

[3] The fees charged by Sherman and Howard already have been reduced based on inadequate billing records.

7

***Water Development, Inc. v. City of Alamosa***, 874 P.2d 352, 387-388 (Colo. 1994). I conclude that reducing the fees sought by Cartel by 100,000 dollars reasonably accounts for the unreasonable duplication of effort demonstrated in the record, including that attributable to the billing by the Lewis Meyers firm, discussed above.

    4.  <u>Time billed for failed claims.</u>  Initially, Cartel named four individuals as defendants. Ultimately, Cartel dismissed its claims against two of the individual defendants, and the court granted motions to dismiss as to two other individual defendants. The court awarded to individual defendant, William Ereby, sanctions under FED. R. CIV. P. 11.  *Order* [#182]. Cartel was required to pay to Mr. Ereby 16,500 dollars to cover attorney fees incurred in defending against Cartel's claim. *Id.* Ocwen argues that it should not be required to pay this amount to Cartel as part of an award of attorney fees. According to Cartel, excluding this amount from an award of attorney fees would, in essence, require Cartel to pay the 16,500 dollar sanction twice.

    I agree with Ocwen. If Ocwen were required to pay to Cartel the amount of the Rule 11 sanction against Cartel, then the amount of the Rule 11 sanction payment would be refunded to Cartel. The effect of such a refund would be to undo the Rule 11 sanction previously ordered by the court. Thus, the attorney fees sought by Cartel must be reduced by an additional 16,500 dollars.

    5.  <u>Time billed for secretarial and administrative work.</u>  Ocwen contends that Cartel should not recoup fees charged for administrative tasks. Mr. Merrick's law firm did not bill separately for secretarial and administrative work from February, 2006, until September, 2010. This fact suggests that attorney and paralegal billing to Cartel during that time included secretarial overhead. In September, 20120, Mr. Merrick's firm began to bill for the work of Sabrina Marymee, the Office Administrator for the Merrick firm.

8

These billings relate to work done by Ms. Marymee in the weeks immediately before and during the second trial. At about the same time, the hourly rate charged for Cartel's lead attorney, Glenn Merrick, increased from 395 dollars per hour to 440 dollars per hour. *See Motion* [#841], Exhibits Q-4, Q-5, Q-6.

Under Colorado law, a court may allow recovery of fees for services of paralegals, law clerks, and other staff if the total of fees awarded is reasonable. **Newport Pacific Capital Co., Inc. v. Waste**, 878 P.2d 136, 141 (Colo. App. 1994). In this case, Ms. Marymee's time was not billed separately until September of 2010. The fair inference is that her time was included in overhead and reflected in the hourly rates billed by lawyers and paralegals. Nothing in the record indicates why Ms. Marymee's time changed from overhead included in attorney and paralegal billing to a separate billing item in September of 2010. On this basis, I conclude that Ms. Marymee's time should be included as overhead before and after September of 2010. Therefore, the time billed separately for Ms. Marymee's work is not properly included in an award of reasonable attorney fees. Thus, the attorney fee award sought by Cartel must be reduced by an additional 4,941 dollars.

6. Jacobs Chase settlement. When the Jacobs Chase firm ended its representation of Cartel, it owed the firm about 221,193 dollars in fees. Ultimately, Jacobs Chase accepted 30,000 dollars as payment and released the attorney's lien filed in this case. Ocwen argues that it would be unreasonable for fees billed by Jacobs Chase in excess of the amount actually paid by Cartel. I disagree. A party may be entitled to an award of attorney fees even though that party is not obligated to pay the attorney fees in question. **City of Wheat Ridge v. Cerveny**, 913 P.2d 1110, 1117 (Colo. 1996). Awarding reasonable attorney fees even when the legal services are

9

Case 1:01-cv-01644-REB-CBS   Document 883   Filed 03/20/12   USDC Colorado   Page 10 of 17

provided for a lower fee, or no fee, promotes the policies that underlie fee statutes, such as the deterrence of improper conduct. *Id*. In this case, the jury concluded that Ocwen acted in a malicious or willful and wanton manner when it misappropriated Cartel's trade secret. *Cartel Asset Management v. Ocwen Financial Corp.*, 249 Fed. App'x 63, 85 (10th Cir. 2007). Deterrence of improper conduct is a relevant consideration in this case.

    7.  Additional attorney fees - Cartel's reply. In its reply [#867], Cartel seeks an additional award of 29,629 dollars in fees incurred since Cartel filed its motion for an award of attorney fees [#841]. These additional fees are related to preparation of the reply, resolution of issues concerning Ocwen's satisfaction of the judgment in this case, preparation of a motion challenging the award of costs in this case, and similar matters. I conclude that these additional services and this amount are reasonable, except for the secretarial time billed for the work of Ms. Marymee, which totals 566 dollars. For the reasons discussed above, I find that Ms. Marymee's time properly is considered to be part of the overhead included in the hourly billing by the attorneys in the Merrick firm. Thus, I include in the lodestar figure below an additional 29,063 dollars.

    8.  Additional attorney fees - motion for increase [#879]. In its motion for an increase of attorney fees [#879], Cartel seeks an additional 4,456 dollars in attorney fees incurred since it filed its reply in support of its motion for attorney fees. Considering the original motion [#841] and the present motion together, I find and conclude that these additional fees are documented adequately and are reasonable. Thus, I include in the lodestar figure below an additional 4,456 dollars.

    9.  Lodestar amount. Considering all of the relevant factors, I find and conclude that 1,046,981 dollars is a reasonable lodestar amount in this case. My calculations are as follows:

| | |
|---|---|
| Hourly fees requested by Cartel | 1,189,268 dollars[4] |
| Hourly fees in reply [#867] | + 29,063 dollars |
| Hourly fees in motion for increase [#879] | + 4,456 dollars |
| Total reductions by the court | -175,806 dollars |
| Lodestar figure | 1,046,981 dollars |

### B. Other Factors - Contingency Fee

In addition to the hourly fees discussed above, Cartel seeks an award of attorney fees equal to the contingent fee earned by its counsel. Once a lodestar amount is determined, it may be adjusted up or down by considering other factors not included in the lodestar calculation. *Spensieri*, 804 P.2d at 271 (*citing Johnson v. Georgia Highway Express, Inc.*, 488 F2d 714 (5th Cir. 1974)); *Tallitsch*, 926 P.2d at 147. In this case, the factors relevant to an upward adjustment from the lodestar amount are the degree of success achieved, the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, the customary fee for similar work, the fee agreement between the client and the attorney, and whether the fee is fixed or contingent.

When the Merrick firm undertook representation of Cartel in February, 2006, Cartel and the Merrick firm entered into a hybrid hourly fee and contingent fee agreement. *Motion* [#841], Exhibit I. The agreement provides for payment of attorneys and other professionals at stated hourly rates. In addition, the agreement provides for a contingent fee. The contingent fee provision applies only to any settlement or judgment in favor of Cartel in excess of the base amount of 8.8 million dollars. The agreement

---

[4] *Motion* [#841], Exhibit J.

provides that the Merrick firm is entitled to twenty percent of any amount awarded to Cartel in excess of 8.8 million dollars, up to 10 million dollars in excess of the base amount.

The judgment ultimately entered in favor of Cartel was for the amount of 14,574,183 dollars. Thus, the contingency fee is applicable to that portion of the judgment which exceeds 8.8 million dollars. That amount is 5,774,183 dollars. Twenty percent of that amount is 1,154,837 dollars. Cartel seeks an award of this amount as part of the attorney fees award.

According to Ocwen, an award that includes the full amount of this contingency fee would be unreasonable. In light of the factors relevant to an upward adjustment of the lodestar, Ocwen asserts that a ten percent premium above the lodestar figure is reasonable, but that any further increase in the fee award is unreasonable.

I conclude that Cartel and its counsel achieved a high degree of success in this case. In closing argument at the second trial, Cartel argued for 35 million dollars in actual damages, plus additional punitive damages. In comparison, Ocwen contends, the 14.5 million dollar judgment obtained by Cartel demonstrates only moderate success. Cartel notes that, at the second trial, Ocwen argued for actual damages of about 68 thousand dollars. Assuming an equal amount was awarded in punitive damages, the total would be about 136 thousand dollars. Compared to the figures argued by Ocwen, the amount of the final judgment demonstrates an exceedingly high degree of success.

The fact that a party was not granted all of the relief it sought is not necessarily a significant factor in determining a reasonable amount of attorney fees. ***Stuart v. North Shore Water & San. Dist.***, 211 P.3d 59, 64 (Colo. App. 2009). "The standard to be

applied in determining this question is whether the relief granted is to be considered limited in comparison to the scope of the litigation as a whole." *Id*. (citation and internal quotation omitted). Comparison of the final judgment to the damages figures argued by the parties at trial informs the assessment of Cartel's degree of success only obliquely. More important is the fact that Cartel engaged in a decade of litigation against a well-funded defendant, Ocwen, which provided formidable opposition throughout the litigation. Ultimately, Cartel demonstrated that Ocwen willfully misappropriated Cartel's trade secrets and persuaded the jury that the maximum amount of punitive damages is justified. Those are the primary bases of the 14.5 million dollar judgment entered against Ocwen. In comparison to the scope of this litigation as a whole, the final judgment in this case constitutes a high degree of success for Cartel.

Unquestionably, the amount in controversy is large. Again, the jury awarded about 6.3 million dollars in actual damages plus an equal amount in punitive damages. The court enhanced the punitive damages award by an additional one million dollars. This case undoubtedly was complex on many different levels, and more than ten years of litigation were required to represent Cartel effectively. Measured by the success achieved on behalf of Cartel, the relative value of the legal services provided to Cartel is high.

The customary fee for similar work is an important factor when determining the reasonableness of attorney fees. The existence of a fee agreement between Cartel and the Merrick firm, and the nature of that agreement, also play a role in determining whether an increase over the lodestar amount is reasonable. Here, it is undisputed that the hourly rates charged by Cartel's primary attorneys are reasonable. The Merrick firm contends that it charged Cartel a discounted hourly rate as part of the hybrid hourly fee

and contingent fee agreement with Cartel. The fee agreement states that the hourly rates charged to Cartel by the Merrick firm are "below that charged to clients by lawyers of comparable education, training, skill and experience working in the leading Denver law firms working on complex litigation engagements comparable to" this case. *Motion* [#841], Exhibit I, p. 2. The agreement recites also the perceived risk that Cartel would not be able to pay a material portion of the Merrick firm's fees and disbursements absent a significant recovery from Ocwen. *Id.* Given these circumstances, Cartel argues, the contingent fee portion of the fee agreement is both reasonable and customary for similar work.

Ocwen argues that the hourly rates charged under the hybrid fee agreement are not discounted hourly rates. Rather, Ocwen asserts, the hourly rates are reasonable rates for attorneys and paralegals of similar background and experience. In reply, Cartel notes the sampling of law firm billing rates published by the National Law Journal on December 8, 2008. *Reply* [#867], Exhibit 2. That survey shows hourly rates for partners at two of the large Denver law firms as ranging from 285 dollars per hour to 635 dollars per hour. Cartel argues that partners in those firms with nearly 30 years of experience in commercial litigation are billing in the higher end of the range shown in the survey. Mr. Merrick has credentials generally comparable to partners in those firms with many years of experience. Under the hybrid fee agreement, Mr. Merrick initially billed his time to Cartel at 350 dollars per hour. Later, that rate rose to 395 dollars per hour. At about the time of the second trial, the rate rose to 440 dollars per hour. I conclude that these hourly rates reflects roughly a fifteen percent discount to Cartel.

Notably, hourly rates are not the final and only measure of reasonable attorney fees. Contingent fee agreements are used commonly as a measure of attorney fees,

14

and hybrid contingent fee and hourly fee agreements are also used commonly.  The fact that a contingent fee may result in a larger fee than would a reasonable hourly fee does not necessarily make a contingent fee unreasonable.

Contingent fees are often designed to account for the risk that the attorney will not be paid for his or her representation in the litigation.  The "quantum of financial risk" undertaken by counsel is relevant to determining the reasonableness of a contingent fee.  ***City of Wheat Ridge v. Cerveny***, 913 P.2d 1110, 1117 (Colo. 1996).  Ocwen argues that the financial risk undertaken by the Merrick firm was minimal.  Contrastingly, the Merrick firm argues that the risk was significant.  Notably, Cartel has not been generating operating revenue since mid-2004.  When Cartel hired Mr. Merrick, Cartel was unable to pay about 220,000 dollars in fees owed to the Jacobs Chase firm.  By the end of the second trial, Cartel had an unpaid balance with the Merrick firm of over 380,000 dollars.  Given these and other circumstances evidenced in this case, I conclude that the Merrick firm undertook a substantial financial risk in agreeing to represent Cartel.  That risk informs a determination of what level of contingent fee is reasonable in this case.

Ultimately, I conclude that an upward adjustment above the lodestar figure is merited in this case.  That is true primarily because, under the circumstances of this case, a hybrid hourly fee and contingency fee agreement constituted a reasonable approach to the measurement of attorney fees for Cartel.  Absent the incentive of a contingency fee, there was a significant risk that Cartel would not have been able to retain counsel who could prosecute this case successfully.  That risk was driven by the very real possibility that Cartel could not fully fund the litigation.  All of the other relevant factors also augur for an upward adjustment above the lodestar figure.  Unfortunately,

balancing the relevant factors does not lead to a precise algorithm that prescribes a reasonable increase above the lodestar figure. Rather, I must exercise my informed discretion to strike a balance among the competing factors.

I conclude that an upward adjustment of the lodestar figure in the amount of 900,000 dollars is reasonable and merited in this case. Such an enhancement recognizes and rewards the efforts and skill of counsel, the risks undertaken by counsel, the results obtained by counsel, the complexity of this case, the hybrid fee agreement between Cartel and its attorney, the complexity of this case, and the value of the legal services to Cartel. Judged by any and all of the relevant measures, this contingency fee is reasonable and fair.

## IV.  CONCLUSION & ORDERS

Cartel is entitled to an award of attorney fees in the total amount of 1,946,981 dollars. That figure represents the lodestar figure of 1,046,981 plus a reasonable contingent fee enhancement of 900,000 dollars.[5] The costs due to Cartel are addressed in a separate order.

**THEREFORE, IT IS ORDERED** as follows:

1.   That the **Plaintiff's Motion for Award of Attorneys' Fees** [#841] filed April 19, 2011, is **GRANTED** consistent with the foregoing findings of fact and conclusions of law and the following orders;

2.   That the plaintiff's **Motion for Increase in Attorneys' Fee Award for**

---

[5] Ocwen indicates that it already has paid to Cartel a total of 198,670 dollars in attorney fees. Response [#860], p. 2 n.2. Those payments are not documented in the record, however, and it is unclear if Cartel agrees that this amount already has been paid. I assume that the parties can determine the credits to which Ocwen is entitled, and the court will not undertake to determine the balance currently due from Ocwen.

**Fees/Costs Incurred Following July 22, 2011** [#879] filed September 9, 2011, is **GRANTED**;

    3. That under §7-74-105, C.R.S., the plaintiff, Cartel Asset Management, a Colorado corporation, is **AWARDED** attorney fees in the amount of 1,946,981 dollars;

    4. That the defendants, Ocwen Financial Corporation, a Florida corporation, Ocwen Federal Bank FSB, a subsidiary of Ocwen Financial Corporation, and Ocwen Loan Servicing, LLC, in its capacity as successor-in-interest to Ocwen Federal Bank, FSB, **SHALL PAY** 1,946,981 dollars to Cartel Asset Management, a Colorado corporation, on or before May 4, 2012;

    5. That to the extent the plaintiff seeks attorney fees greater than those awarded by the court in this order, the request is **DENIED**; and

    6. That an amended judgement **SHALL BE ENTERED** reflecting this award of attorney fees.

    Dated March 20, 2012, at Denver, Colorado.

                                                    **BY THE COURT:**

                                                    *[signature: Bob Blackburn]*
                                                    Robert E. Blackburn
                                                    United States District Judge